**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, ) <br> *ex rel.* William LaCorte, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WYETH, ) <br> ) <br> Defendant. ) | Case No. 06-CV-11724 <br> Hon. Douglas P. Woodlock |

**WYETH'S RESPONSE TO RELATOR WILLIAM ST. JOHN LACORTE'S**
<u>**MOTION FOR ATTORNEYS' FEES AND COSTS**</u>

# <u>TABLE OF CONTENTS</u>

I.   RELATOR LACORTE'S ATTORNEYS PLAYED A MINOR ROLE IN REACHING SETTLEMENT IN THIS MATTER.................................................................................. 2

II.  THE "BILLING RECORDS" SUBMITTED ARE NOT CONTEMPORANEOUS, REASONABLE, OR RELIABLE.................................................................................. 5

III. THE BILLING RECORDS SUBMITTED SEEK REIMBURSEMENT FOR TASKS THAT THE CASE LAW MAKES PLAIN ARE UNREIMBURSABLE AND AT EXCESSIVE RATES. ................................................................................................................. 11

    A.  Unreimbursable Tasks ................................................................................. 12

    B.  Work on Collateral Issues............................................................................ 12

    C.  Work on Unsuccessful Theories .................................................................. 13

    D.  Partner Rates for Paralegal and Associate Work ......................................... 14

    E.  Clerical and Secretarial Tasks..................................................................... 15

    F.  Excessive Costs.......................................................................................... 15

CONCLUSION.................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alfonso v. Aufiero,*
   66 F. Supp. 2d 183 (D. Mass. 1999) ...................................................................................14

*Blum v. Stenson,*
   465 U.S. 886 (1984) ......................................................................................................5

*Burke v. McDonald,*
   572 F.3d 51 (1st Cir. 2009) ...........................................................................................13

*Calhoun v. Acme Cleveland Corp.,*
   801 F.2d 558 (1st Cir. 1986) .....................................................................................5, 17

*Conservation Law Found., Inc. v. Patrick,*
   767 F. Supp. 2d 244 (D. Mass. 2011) ........................................................................5, 15, 16

*D.G. ex rel. Strickland v. Yarbrough,*
   No. 08-CV-074-GKF-FHM, 2013 WL 1343151 (N.D. Okla. Mar. 31, 2013) ........................16

*E.E.O.C. v. AutoZone, Inc.,*
   934 F. Supp. 2d 342 (D. Mass. 2013) ........................................................................6, 12

*Gay Officers Action League v. Puerto Rico,*
   247 F.3d 288 (1st Cir. 2001) .........................................................................................5

*Grendel's Den, Inc. v. Larkin,*
   749 F.2d 945 (1st Cir. 1984) .....................................................................................5, 12

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ..................................................................................................11, 12

*Ins. Recovery Grp., Inc. v. Connolly,*
   95 F. Supp. 3d 73 (D. Mass. 2015) .........................................................................5, 6, 15

*Lipsett v. Blanco,*
   975 F.2d 934 (1st Cir. 1992) .........................................................................................15

*Marrotta v. Suffolk County,*
   726 F. Supp. 2d 1 (D. Mass. 2010) ...............................................................................14

*McMillan v. Mass. Soc'y for Prevention of Cruelty to Animals,*
   140 F.3d 288 (1st Cir. 1998) .........................................................................................14

*Rogers v. Cofield*,
   935 F. Supp. 2d 351 (D. Mass. 2013) .......................................................................5

*Rogers v. Okin*,
   821 F.2d 22 (1st Cir. 1987) ................................................................................4, 11

*Rolland v. Cellucci*,
   106 F. Supp. 2d 128 (D. Mass. 2000) ......................................................................6

*Showtime Entm't LLC v. Ammendolia*,
   No. 10-CV-40194-FDS, 2016 WL 1555685 (D. Mass. Apr. 15, 2016) ...................16

*Specialty Retailers, Inc. v. Main St. NA Parkade, LLC*,
   804 F. Supp. 2d 68 (D. Mass. 2011) ......................................................................13

*Tenn. Gas Pipeline Co. v. 104 Acres of Land, More or Less, In Providence Cty., State of R.I.*,
   32 F.3d 632 (1st Cir. 1994) .....................................................................................6

*Torres–Rivera v. O'Neill–Cancel*,
   524 F.3d 331 (1st Cir. 2008) ..............................................................................5, 12

*U.S. ex rel. John Doe I v. Pennsylvania Blue Shield*,
   54 F. Supp. 2d 410 (M.D. Pa. 1999) ......................................................................13

*Ursic v. Bethlehem Mines*,
   719 F.2d 670 (3d Cir. 1983) ..................................................................................14

## Statutes

31 U.S.C. § 3730(d)(1) ................................................................................................1, 17

Relator LaCorte's Motion for Attorneys' Fees and Costs, ECF No. 563,[1] seeks an excessively large fee award on the basis of a distorted recitation of his counsel's role in the case, and a flawed and unreliable set of billing records.  Wyeth does not dispute that Relator LaCorte is entitled to recover reasonable fees and expenses under 31 U.S.C. § 3730(d)(1).  The amounts sought, however, are in no way reasonable, and Wyeth respectfully submits that significant reductions must be applied.[2]

As the record makes clear, Relator LaCorte and his attorneys at best played a modest role in this suit.  It was Relator Kieff whose complaint asserted that Wyeth's contract with hospitals resulted in Bundled Sales (as that term is defined in the Medicaid Drug Rebate Agreement) and, thus, that Wyeth had submitted allegedly false Best Prices to the government.  And it was the federal government and the states who were preparing to bring those claims to trial when the parties reached a settlement.  Relator LaCorte's off-label marketing and kickback claims remained firmly in the periphery, and his attempts to rewrite history with Dr. Sakla ("Sakla") at the center of this litigation are far-fetched and plainly contradicted by the undisputed record.  Accordingly, Relator LaCorte's request for more than $8 million in fees and expenses is grossly disproportionate to the Sakla Law Firm's actual role.

Nor are LaCorte's claims supported by the type of reasonable, contemporaneous billing records that the law requires.  Wyeth has reviewed in detail the records submitted by Relator LaCorte and the Sakla Law Firm in support of the request for fees, Sakla Decl. Exs. 3-5, ECF No.

---

[1]  All citations herein to docket entries refer to the docket in the LaCorte action, No. 1:06-CV-11724.

[2]  To very clear, this submission does not relate to the internecine fight between Relator LaCorte's various lawyers over their respective shares of the substantial ($20,858,731.87) contingency fee that they claim (and Dr. LaCorte does not appear to dispute) is due to them under a retention agreement with Relator LaCorte.  *See* Mot. to Intervene Ex. 1 ¶ 23, ECF No. 556.  The $8,062,222.37 in "reasonable" attorneys fees and expenses that Relator LaCorte requests on behalf of Dr. Sakla ("Sakla") and the Sakla Law Firm would be in addition to whatever share of the $20,858,731.87 contingency fee the Court awards Sakla.  To put a finer point on it, regardless of the outcome here, there is no doubt that Sakla will be handsomely compensated for his work in connection with this case.

565, and it has prepared a line-by-line analysis of the reasonableness of that request.  That analysis is attached as Exhibit 1 to the Declaration of Brien T. O'Connor, submitted in conjunction with this Response.  Wyeth has also reviewed the records submitted by Relator LaCorte and the Sakla Law Firm in support of the request for costs and expenses. Sakla Decl. Ex. 2.  That analysis is attached as Exhibit 2 to Mr. O'Connor's Declaration.  A chart summarizing the analyses in Exhibits 1 and 2 is attached to Mr. O'Connor's Declaration as Exhibit 3.

On the basis of this analysis, Wyeth submits that the Court should award Relator LaCorte no more than $2,517,146.88 in statutory attorneys' fees and $73,035.62 in costs, and respectfully submits that there are good grounds for awarding him much less.  These amounts represent a more than reasonable award, given the limited role Relator LaCorte and his counsel played in bringing about the ultimate settlement in this matter, and the woefully deficient records supporting the fee request.

## I.    RELATOR LACORTE'S ATTORNEYS PLAYED A MINOR ROLE IN REACHING SETTLEMENT IN THIS MATTER.

The filings submitted in support of Relator LaCorte's Motion grossly exaggerate the role that his attorneys played in this litigation and the ultimate settlement.  Relator LaCorte relies on this embellished narrative to request not only a wildly exaggerated lodestar fee but also an upward adjustment of 25%.  LaCorte Mem. at 15-17, ECF No. 564.  Neither is warranted.

Relator LaCorte simply misrepresents the record when he says that the settlement occurred "as the result of" the Sakla Law Firm's contributions.  *Id.* at 2.  As the Court well knows, the various complaints filed in this case advanced three separate and distinct theories of liability:  (1) Wyeth reported allegedly false Best Prices because its commercial agreements with hospitals gave rise to Bundled Sales under the MDRA ("the Bundled Sale pricing claim"); (2) Wyeth allegedly marketed Protonix off-label ("the off-label claim"); and (3) Wyeth allegedly

violated the Medicare and Medicaid Anti-Kickback Statute ("the AKS claim"). The United

States and the States intervened only as to the Bundled Sale pricing claim. That claim was

advanced only in Relator Kieff's complaint. *See* U.S. Am. Compl., ECF No. 108; Am. Compl.

of States and D.C., ECF No. 115; Conn. Compl., ECF No. 178; Multi-State Compl., ECF No.

179; Okla. Compl., ECF No. 180; Ark. Compl., ECF No. 185. Indeed, the words "Bundled Sale"

do not appear  anywhere in Relators LaCorte's initial or Amended Complaint, and the allegation

that the Protonix Performance Agreements "bundled" Protonix Oral and Protonix IV together

was only added to his Amended Complaint after he gained access to Relator Kieff's pleadings

when the two cases were consolidated. *Compare* LaCorte Compl., ECF No. 32 *with* LaCorte

Am. Compl., ECF No. 111.

Moreover, both the United States and the States declined to join the Relators' existing

complaints, instead electing to pursue the Bundled Sale pricing claim by filing their own separate

complaints in intervention. The parties reached a negotiated resolution on the eve of a trial that

was to focus solely on the Bundled Sale pricing claim, and it was that Bundled Sale pricing claim

that ultimately led to the resolution of this case. In fact, at the time of the settlement, the Court's

contemplated trial structure left open the possibility that the Relators and their counsel would not

participate in the trial at all or, at most, would have a very limited role to play.[3]

Relator LaCorte's narrative also exaggerates the role that the Sakla Law Firm played in

discovery in this case. While Sakla and Ms. Reuther ("Reuther") attended a number of

depositions, the objective and incontrovertible record demonstrates that their participation was

minor at best. Attorneys from the Sakla Law Firm attended 27 of the 42 depositions taken in the

case, but Sakla only questioned eight of those witnesses. In the 16 depositions she attended,

---

[3] *See, e.g.*, O'Connor Decl. Ex. 4, Trans. of Nov. 6, 2015 Hearing, 15:16-20 ("I have not thought about it as deeply as I would, but I do not want, I think, at this point [to] have the relators' trial, if there is a relators' trial, tried at the same time, just as I do not want to have the state cases tried at the same time.").

Sakla Decl. ¶ 54, Reuther did not ask a single question.  *See* Decl. of Anastacia Cates. ("Cates Decl.") Ex. A.  When Sakla did ask questions, his participation was short and perfunctory.  Questions posed by Sakla, and the witnesses' responses to those questions, account for only 180 of the 7,257 pages of deposition transcripts in this case – just 2.5%.  *Id.*  Nearly half  (87) of those pages came in the deposition of a single witness, Michael McHale – a witness who was not significant enough to warrant inclusion on either the United States' or Wyeth's trial witness list.[4]  *See id.*; U.S. Tentative Witness List, ECF No. 417; Wyeth Tentative Witness List, ECF No. 418.  Of the 15 depositions noticed by Wyeth, Sakla did not attend the preparation session for a single witness.  *See* Cates Decl. Ex. A (based on witnesses' testimony regarding their preparation efforts).

Relator LaCorte's papers attempt to credit Sakla with making Wyeth witness John Alivernini "so shaken that he abruptly terminated his own deposition and left the building immediately."  LaCorte Mem. at 4-5; Azorsky Decl. ¶ 6.  The reality, however, was much less dramatic.  Mr. Alivernini ("Alivernini") informed plaintiffs at the beginning of the day that he had a prior commitment that required him to leave the deposition at 6:00 PM.  After the deposition was started late, Sakla's questioning extended beyond this pre-announced cut-off.   As the record makes perfectly clear, Alivernini walked out of the deposition at 6:05 PM, consistent with his earlier-announced intention to do so.[5]

The First Circuit has cautioned that upward adjustments to lodestar calculations are appropriate only in exceptional circumstances.  *Rogers v. Okin*, 821 F.2d 22, 28 (1st Cir. 1987)

---

[4]  To provide some context, the United States' witness list included 53 names.  Put differently, in the United States' judgment, Mr. McHale was not among the top 53 most important people to proving its case.

[5]  *See* O'Connor Decl. Ex. 5, Alivernini Dep., 305:14-19 ("THE WITNESS:  I said when I came here today, I was leaving at 6:00.  It's now five after 6:00.  I have to be somewhere at 7:00.  It's going to take me at least an hour to get there, so I'm already late."); *id.* at 307:6-8 ("MR. JONAS:  It was made quite clear at the beginning of this deposition that he had a hard stop at six o'clock.").

(citing *Blum v. Stenson*, 465 U.S. 886, 898-901 (1984)).  The indisputable record amply demonstrates that this is not such a case.  Relator LaCorte's self-aggrandizing submission distorts the history of this litigation in order to cast himself and his attorneys in an outsized role. As the Court is well aware, this narrative does not square with reality, and it does not support the outsized fees requested.

## II. THE "BILLING RECORDS" SUBMITTED ARE NOT CONTEMPORANEOUS, REASONABLE, OR RELIABLE.

Wyeth agrees with Relator LaCorte that "[a]ttorneys' fee requests must be supported by contemporaneous records of hours worked, or the number of hours may be reduced."  LaCorte Mem. at 13 (citing *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001)).  Indeed, where parties seeking fee-shifting submit records that are either non-contemporaneous or so vague as to preclude a meaningful evaluation of their reliability, courts routinely impose significant blanket reductions in the amounts sought.  *See Conservation Law Found., Inc. v. Patrick*, 767 F. Supp. 2d 244, 252 (D. Mass. 2011) (citing *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 952 (1st Cir. 1984)) ("the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance");[6] *Rogers v. Cofield*, 935 F. Supp. 2d 351, 362 (D. Mass. 2013) (quoting *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d 331, 336 (1st Cir. 2008)) ("A court may either discount or, in egregious cases, disallow hours where time records are 'too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like.'"); *Ins. Recovery Grp., Inc. v. Connolly*, 95 F. Supp. 3d

---

[6]  The court in the *Conservation Law Foundation* case applied a discount for some attorneys due to their block billing and disallowed fees <u>entirely</u> for a different lawyer who did not maintain contemporaneous records.  *Id.* at 253 ("Attorney Kelly's declaration is rife with recollections of how many hours she generally worked and that she 'thought' she may have stayed late or left early on certain occasions. This type of record based on recollection cannot be considered 'a full and specific accounting of . . . time.' Accordingly, Attorney Kelly's claimed 266.25 hours are disallowed.") (citing *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir. 1986).  Disallowing the Sakla Law Firm's request for fees entirely would be justified on this basis alone.

73, 81 (D. Mass. 2015) ("The courts disfavor block billing and have broad discretion in reducing fees requests, generally through an across-the-board global fee reduction") (internal quotes omitted).

The only reasonable conclusions that one could reach after reviewing the records that Relator LaCorte has submitted on behalf of the Sakla Law Firm are either that the Sakla Law Firm did not maintain contemporaneous records (more likely) or, if it did, that its record-keeping practices were so sloppy as to be entirely unreliable (equally unhelpful). Because the Sakla Law Firm apparently failed to maintain reliable, contemporaneous billing records, because the records that have been provided to this Court are exceedingly vague and are plagued with block-billed entries that preclude any meaningful review, and because many of the entries are unreasonable on their face, Wyeth respectfully submits that a blanket 50% reduction in the amount sought is appropriate here. *See, e.g.*, *Rolland v. Cellucci*, 106 F. Supp.2d 128, 135 (D. Mass. 2000) (applying a 50% reduction for failure to maintain reliable contemporaneous records).[7]

By far the most common phrase in the records attached to Sakla's declaration is "receipt and review of email(s)." This phrase appears some 5,477 times in the records for all three custodians, and 2,315 times in Sakla's records alone – more than half of his 4,014 total time-entries. *See* O'Connor Decl. Ex. 1. The next most common phrase, "receipt and review of [docket entry]," appears 1,123 times in total, and 382 times in Sakla's records alone. *See id.* Perhaps these records are accurate, and the employees of the Sakla Law Firm really did spend an inordinate amount of time in connection with this case "receiving and reviewing emails" and "receiving and reviewing docket entries." It seems far more plausible, however, that the records

---

[7] *See also Tenn. Gas Pipeline Co. v. 104 Acres of Land, More or Less, In Providence Cty., State of R.I.*, 32 F.3d 632, 634 (1st Cir. 1994) (affirming a 30% reduction on the basis of vague records alone); *Ins. Recovery Grp.*, 95 F. Supp. 3d at 81 (reducing fees by 20% solely on the basis of block-billing); *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 355 (D. Mass. 2013) (same).

the Sakla Law Firm submitted to this Court to justify its more than $8 million request were not actually contemporaneously maintained billing records, but rather  were created long after-the-fact by looking at case-related emails – the only contemporaneous "records" that the Sakla Law Firm did maintain – and entries on the Court's docket, and arbitrarily assigning times to the task of "receiving and reviewing" those emails and docket entries.

Relator LaCorte's supporting declarations seek to imply through speculation and innuendo that the records submitted to the Court were in fact contemporaneously maintained, not by the lawyers working on the case – Sakla and Reuther – but instead by Sakla's paralegal, Mr. Nolan ("Nolan").  In his Declaration, Nolan purports to have  "charted the hours of attorney work that I observed" based on emails on which he was copied, drafting of pleadings, review of discovery responses, review of documents, review of deposition transcripts, "etc."  Nolan Decl. ¶¶ 13-14, ECF No. 567.  Nowhere, however, do Relator LaCorte's filings explain how Nolan managed to estimate the time spent on tasks, many of which he clearly did not participate in.  For example, on what does Nolan base his estimate that Sakla spent 10 hours and Reuther spent 8.2 hours attending the same deposition of Kevin O'Neill, a deposition which he definitively did not attend (despite inexplicably billing 0.2 hours for doing so)?  *See* O'Connor Decl. Ex 1 at Oct. 22, 2010.  And how could Nolan possibly know that Sakla spent 12 hours at an April 10, 2011 status conference in Boston (or bill 0.2 hours for it himself), particularly given that the conference in question actually took place on April 11, 2011, and only lasted 25 minutes?  *Compare id.* Ex. 1, at Apr. 10, 2011 *with id.* Ex. 6, at 4:6, 17:22 (indicating that the hearing began at 11:30 AM on April 11, 2011, and ended at 11:55 AM).

Whether the Sakla Law Firm's guesswork occurred contemporaneously or in preparation for this filing is, frankly, of no moment.  Even taking at face value Relator LaCorte's assertion

that these records were maintained contemporaneously, it is clear that the hours and tasks in question were not maintained in a reliable manner. The hours in question often bear absolutely no resemblance to the task at hand. One can only speculate, for instance, how Sakla, Reuther, and Nolan occupied themselves for 24 minutes *each* supposedly devoted to reviewing first Suzanne Hixson's motion to appear *pro hac vice* and then the Court's order granting that application. *See* O'Connor Decl. Ex 1, at Jan. 28, 2011 to Feb. 1, 2011. Relator LaCorte seeks $730 in total for this wholly *de minimis* task, one of hundreds of its kind. By way of another example, Relator LaCorte seeks reimbursement for 5 hours of Sakla's time, 0.5 hours of Reuther's time, and 3 hours Nolan's time for "Finaliz[ing] and e-Fil[ing] Doc 06-130," which is described in Sakla's own billing records as a "2 page" joinder to the "Government['s] Filing Doc 06-128 and 06-129." *Id.*, at Dec. 14, 2009. On October 22, 2009, Nolan bills 6 hours for reviewing a clerk's note on the Court's docket, and on May 19, 2008, Sakla claims 1 hour of time for an "Email exchange between SKS and Mrs. Markey concerning scheduling a trip to Philadelphia." *Id.*

These are not isolated examples. They are part of a persistent pattern that calls into question the reliability of records submitted to this Court. These unreasonable requests also add up quickly. Relator LaCorte seeks a total of $31,660 for time spent by Sakla (70 entries - 18.9 hours - $16,537.50), Reuther (62 entries - 12.4 hours - $9,610.00), and Nolan (71 entries - 31.5 hours - $5,512.50) reviewing *pro hac* motions and the orders granting them. What were they trying to learn? Relator LaCorte requests an additional $28,690 for the time that his lawyers supposedly spent "receiving and reviewing" notices of appearance and notices of withdrawal (Sakla: 56 entries (29 appearance, 27 withdrawal) - 20.3 hours - $17,762.50; Reuther: 48 entries (24 appearance, 24 withdrawal) - 10.6 hours - $8,215.00; and Nolan: 55 entries (29 appearance,

26 withdrawal) - 15.5 hours - $2,712.50).  In total, Relator LaCorte requests $60,350 related to the receipt and review of the very simplest and most uneventful of court filings, for no apparent reason.  To further illustrate the point, Relator LaCorte seeks a total of $133,881.25 in reimbursement for Reuther's time spent attending hearings and depositions (and the associated travel time), notwithstanding that she never asked a single question, nor uttered a word in court.

Vague entries and block-billing only further cloud the picture.  Entries such as one on May 8, 2009, seeking reimbursement for 4 hours of Sakla's time and 1.8 hours of Nolan's time for "Receipt and Review of Emails from Bhambhani to SKS re Wyeth" are too vague to provide a meaningful basis for review.  *Id.*  Was it reasonable for Sakla to spend 4 hours, Reuther 0.5 hours, and Nolan 7 hours on "Receipt and Review of Emails from SKS to LaCorte, SCR, Hyatt, Mao, Finnegan re Wyeth Meetings"?  *Id.*, at Aug. 7, 2009.  Again, it is hard to say without more information.  The examples go on and on.  The October 14, 2004 and February 1, 2005 entries, for instance, provide descriptions that are far too vague to permit a meaningful review.[8]  The February 19, 2010 entry is one among many entries that highlights the problem with block-billing:  It is hard to imagine what Sakla could do for 4 hours, Reuther for 0.3 hours, and Nolan for ***13 hours*** related to the "receipt and review" of emails attaching a proposed scheduling order.  *Id.*  Elsewhere, Relator LaCorte seeks reimbursement for 2 hours of Sakla's time and ***8 hours*** of Nolan's time for "Receipt and Review of Emails from Bhambhani to Ackil, SKS, SCR, Markey, Azorsky re Wyeth Production Letter" and for ***8 more hours*** of Nolan's time for "Receipt and Review of Email from SCR to SNN re: Requesting Email Address of Government Deposition Calendar Producer.  SNN responds."  *Id.*, at Nov. 1, 2010.

---

[8]  *Id.*, at Oct. 14, 2004 (5 hours of Sakla's time and 2 hours of Nolan's time for "Drafting, Receipt and Review of Emails with Counsel re Azorsky's Responses to Questions in Emails with Attachments"); *Id.*, at Feb. 1, 2005 (4 hours of Sakla's time and 2 hours of Nolan's time for "Drafting, Receipt and Review of Emails between SKS, co-counsel, co-counsel and Azorsky.").

Wyeth's point in providing all of these examples is not to convince the Court that it needs to go line-by-line through Relator LaCorte's "billing" submission. Wyeth has done that already. In the next section of this Response, Wyeth highlights certain broad categories of fees for which Relator LaCorte seeks reimbursement, but which the case law says are non-reimbursable. Wyeth's color-coded analysis, attached as Exhibit 1 to the Declaration of Brien O'Connor, groups for the Court's easy reference the specific entries falling into each of the categories discussed below and supports Wyeth's line-item objections. The examples set forth in this section of the Response, coupled with the case law cited above, justify an across-the-board 50% reduction off the remaining entries in Relator LaCorte's request and, frankly, probably a whole lot more. As noted above, when faced with comparably vague, unreliable, and non-contemporaneous records, courts have denied fee requests altogether.

There is also a strong argument that Sakla's request for reimbursement at a rate of $875 per hour is unreasonably high. For example, Sakla obtained an opinion letter in connection with a nearly identical *qui tam* law suit to this one, *United States ex rel. LaCorte v. Merck & Co., Inc.*, No. 2:99-cv-3807-LMA-KWR (E.D. La.), that a reasonable fee for his services was $330 per hour. On its face, that opinion letter does not, as Relator LaCorte contends, limit itself to opining on the rate for Sakla's former law partner. LaCorte Mem. at 9, n.4. Rather, the letter plainly states that "[t]he fee established in the Merck litigation as the statutory legal fee was about $330.00 per hour." See O'Connor Decl. Ex. 7, at 6. Moreover, while the letter may relate to a dispute over 1999 to 2000 fees, LaCorte Mem.at 9, n.4, the Merck case itself settled in 2008, placing the date of that court's statutory fee determination comfortably within the long-running tenure of this matter. Relator LaCorte's brief spends several pages anticipating these arguments. *See id.* at *7-11.* However, rather than litigate whether these rates are reasonable, Wyeth has used

the current rates claimed by Sakla, Reuther, and Nolan in its analysis.  Wyeth simply points to

the rate question as yet another reason why any recovery that the Court might award Relator

LaCorte should be capped at $2,517,146.88 in statutory attorney's fees and $73,035.62 in costs.[9]

## III.   THE BILLING RECORDS SUBMITTED SEEK REIMBURSEMENT FOR TASKS THAT THE CASE LAW MAKES PLAIN ARE UNREIMBURSABLE AND AT EXCESSIVE RATES.

Relator LaCorte is correct that his attorneys have an obligation to "make a good faith

effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary,

just as a lawyer in private practice ethically is obligated to exclude such hours from his fee

submission."   LaCorte Mem. at 11 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The

request submitted by the Sakla Law Firm does nothing of the sort.  The records provided in

support of Relator LaCorte's motion, to the extent they are at all meaningful, are riddled with

entries seeking payment for work on collateral issues, work on unsuccessful theories, partner

time spent on work that could be performed by associates or paralegals, work on clerical or

secretarial tasks, and requests for non-compensable costs.  As explained below, each of these

categories warrants either a reduction in the hourly rate claimed or a denial of reimbursement in

its entirety.[10]

---

[9]  The fact that Relator Kieff's attorneys supposedly expended more than twice the time requested by the Sakla Law Firm, LaCorte Mem. at 14, in no way supports the reasonableness of Relator LaCorte's hours request.  Although it is not before the Court, Wyeth questioned the reasonableness of the 18,290 hours cited by Ms. Markey, *see* Markey Decl. ¶ 5, but through a negotiation was able to reach a settlement with Relator Kieff's lawyers, which – at least from Wyeth's point of view – was premised on Wyeth's reimbursing them for many fewer hours than 18,920. Regardless, Relator Kieff's lawyers played a very different role in this case and, without knowing more about the work Kieff's lawyers did or how they staffed this matter, any comparison of hours is meaningless.  Berger & Montague and later Cohen Milstein are very different law firms than the Sakla Law Firm, and they contributed to the government's prosecution of this matter in very different ways.  The associate resources allocated to reviewing documents are just one significant difference that comes readily to mind.

[10]  Contrary to the assertion in Relator LaCorte's brief, such deductions do not run afoul of the First Circuit's admonition in *Rogers v. Okin* against challenges to "manifold alleged errors" that "strain . . . credulity."  821 F.2d at 30.  In *Rogers*, the Court emphasized that the defendant's challenges lacked specificity and provided no basis for evaluating whether proposed deductions overlapped with one another.  *Id.*  As the Court noted, the net result of the defendant's cumulative proposals would be essentially to deny the $895,000 in claimed fees in its entirety.  *Id.* Wyeth's proposed deductions stand in stark contrast.  Each category of deduction is supported by case law, and each

### A.    Unreimbursable Tasks

Of all the problematic items in Relator LaCorte's fee submission, perhaps most egregious are the legion of entries seeking reimbursement for inordinate amounts of time spent on the smallest, most mundane tasks.  The most glaring examples of this practice (though hardly the only ones) are the requests for more than an hour of cumulative time across the three timekeepers at the Sakla Law Firm for reviewing each and every docket entry in this matter.  *See* Part II *supra*. Even setting aside the reasonable inference that these hours were invented out of whole cloth, they certainly are not entitled to reimbursement.  *See Torres-Rivera*, 524 F.3d at 336 (citing *Hensley*, 461 U.S. at 434) (the court will subtract hours that were "unreasonably, unnecessarily, or inefficiently devoted to the case."); *Grendel's Den,* 749 F.2d at 950 (the court should deduct hours that are "duplicative, unproductive, excessive, or otherwise unnecessary.").  In reaching a reasonable fee award, the Court should accordingly deduct all such hours from Relator LaCorte's application.  These hours are color-coded in purple on Exhibit 1 to the O'Connor Declaration.

### B.    Work on Collateral Issues

Courts routinely deny attorneys' fee awards for hours that are spent on issues that are only tangentially related to the case at hand.  Such hours are properly excluded from the fee calculation because they do not contribute to the underlying successful outcome that gives rise to the fee-shifting in the first place.  *See, e.g.*, *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 352 (D. Mass. 2013) ("Courts generally do not recognize time billed to matters unrelated to the litigation for which an attorney has been retained.").  Here, Relator LaCorte improperly seeks reimbursement for such work as resolving internecine squabbles over the co-relators agreement, drafting confidentiality agreements among Relators, and allocating responsibility for payments to

---

of the proposed deductions corresponds to a line-by-line analysis of Relator LaCorte's records, submitted in conjunction with Wyeth's response.  *See* O'Connor Decl. Ex. 1.

local counsel.[11]  Such hours are not entitled to payment.  *See, e.g.*, *Specialty Retailers, Inc. v. Main St. NA Parkade, LLC,* 804 F. Supp. 2d 68, 74 (D. Mass. 2011) (attorneys' fees were not warranted for, *inter alia,* counsel's work resolving potential conflicts of interest between his clients).  As indicated in pink on Exhibit 1 to the O'Connor Declaration, these charges should be deducted from Relator LaCorte's request as well.

### C.    Work on Unsuccessful Theories

Relator LaCorte is also not entitled to attorneys' fees for work performed in pursuing unsuccessful legal theories, that is, claims other than those on which the case settled.  As explained in Part I *supra*, the federal government and the states intervened only on the Bundled Sale pricing claim, and it was only the Bundled Sale pricing claim that was set to be adjudicated at trial.  Time spent on work relating to the off-label marketing and AKS claims is thus properly excluded from the lodestar calculation.[12]  *See Burke v. McDonald*, 572 F.3d 51, 63 (1st Cir. 2009) ("It is well-established that fees are appropriately excluded from the lodestar . . . when different claims for relief are not interconnected, that is, when the claims rest on different facts and legal theories.") (internal citation omitted); *U.S. ex rel. John Doe I v. Pennsylvania Blue Shield*, 54 F. Supp. 2d 410, 418 (M.D. Pa. 1999) ("Time spent on matters unrelated to successful claims are excluded from the lodestar.").  Entries clearly relating to these theories are highlighted in green on Exhibit 1 to the O'Connor Declaration.

---

[11]  *See, e.g.*, O'Connor Decl. Ex. 1 at Mar. 2, 2006, ("Drafting, Receipt and Review of Emails from co-counsel to LaCorte re Co-Relators Issue and reaching agreement with Kieff... Discussed with Counsel and Client."); *id.* at June 25, 2006 ("Receipt and Review of Relators' Confidentiality and Sharing Agreement"); *id.* at Mar. 23, 2008 ("Drafted Email to Dr. LaCorte memorializing the authorization to hire Mr. Delany as local counsel in Wyeth on an hourly basis, payment responsible by Dr. LaCorte").

[12]  *See, e.g.*,  O'Connor Decl. Ex. 1 at Nov. 24, 2012 ("Receipt and Review of emails from Markey to Azorsky, SKS and Preston re: Ruling in Off-Label Marketing Case is a Win for Drug Makers. Discussed with Client."); *id.* at Mar. 6, 2010 ("SKS Research re Trademark Claims Based on Alleged Mislabeled Drug, ID Michigan Report"); *id.* at Nov. 18, 2011 ("Review Research re Sample Briefs re Anti-Kickback by Relators; Review Research re Sample Briefs re Anti-Kickback by Government").

### D.    Partner Rates for Paralegal and Associate Work

Regardless of whether the rates claimed by Sakla and Reuther actually reflect the value of their services, it is inappropriate for them to charge partner rates for work that could be done by more junior attorneys or even by paralegals.   No client would agree to pay $875 per hour for Sakla to perform hours upon hours of document review or first-level legal research,[13] much less copy, organize, and file documents.[14]   Wyeth cannot be expected to do so either.   *See Marrotta v. Suffolk County*, 726 F. Supp. 2d 1, 5 (D. Mass. 2010) ("[T]his Court will not 'permit an attorney to recover his standard hourly rate . . . for performing tasks appropriate to either a less experienced lawyer or a secretary or paralegal.'") (quoting *McMillan v. Mass. Soc'y for Prevention of Cruelty to Animals*, 140 F.3d 288, 308 (1st Cir. 1998)); *Alfonso v. Aufiero,* 66 F. Supp. 2d 183, 196 (D. Mass.1999) (classifying "responding to discovery requests" as non-core, lower skilled, or paralegal work); *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) ("Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates . . . A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.").   Courts routinely apply a reduced rate to such tasks to more accurately reflect the skill level involved.   Wyeth would ask the Court to do the same here, applying a rate of $440 per hour to associate tasks and $175 per hour (the rate charged for work by the Sakla Law Firm's paralegals) to paralegal tasks.   *See* O'Connor Decl. Ex. 1 (associate tasks coded in yellow, paralegal tasks coded in red).

---

[13]   *See, e.g.*,  O'Connor Decl. Ex. 1 at Jan. 4 to Jan. 7, 2010 (billing 8 hours per day for Sakla to review Wyeth discovery responses and document productions); *id.* at Mar. 31 to Apr. 6, 2008 (billing 6 hours per day each for Sakla and Reuther to conduct "[l]egal research for drafting of amended consolidated complaint, review of documents and prior complaints").

[14]   *See, e.g.*,  O'Connor Decl. Ex. 1 at July 28, 2010 (billing 2 hours of Sakla's time for "Receipt, Printing, Scanning, OCR, Review Eidetic Tape Transcripts re PPA, Conversation to Word Format and PDF Format. Printed for SKS."); *id.* at May 19, 2008 (one of dozens of entries for Sakla for "Drafting, Receipt and Review of Emails re Attachments and Intra-Office Document Organization."); *id.* at Mar. 31, 2011 (billing 2 hours of Sakla's time to "Gather and organize documents re Dept. of Justice Sixteenth Production; isolate documents using relevant key word searches; compile document packages for further review; and deposition preparation.").

### E.   Clerical and Secretarial Tasks

Even more egregious than partner work on associate or paralegal tasks is work by trained legal professionals on clerical or secretarial projects.  The First Circuit has made clear that "clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them."  *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir.1992).  Entries throughout Relator LaCorte's records for such tasks as tallying expenses, moving documents between conference rooms, and scheduling conference calls fall well within this prohibition.[15]  *See Ins. Recovery Grp.*, 95 F. Supp. 3d at 82 (denying recovery for clerical work and identifying a range of specific problematic entries).  As courts in this district have explained, such work is not entitled to reimbursement because it constitutes part of the general overhead associated with running a law office – these costs are built into the hourly fees charged for legal services, just as the cost for rent and electricity would not be passed along to the client separately.  *See, e.g.*, *Conservation Law Found.*, 767 F. Supp. 2d at 254 ("Fees for work done by secretaries and administrative staff are not compensable, as they are considered part of the overhead included in counsel's fee.") (internal quotes omitted).  Wyeth respectfully requests that the Court deduct such entries from Relator LaCorte's request as well.  *See* O'Connor Decl. Ex. 1 (coded in orange).

### F.   Excessive Costs

Many of the entries on Relator LaCorte's costs and expenses submission are also noncompensable.  *See* Sakla Decl. Ex. 2; O'Connor Decl. Ex. 2.  Office supplies and in-house copying services, for example, constitute typical overhead expenses associated with operating a law office, and are not recoverable.  *See Ins. Recovery Grp.*, 95 F. Supp. 3d at 87, ("The costs of

---

[15] *See, e.g.*,  O'Connor Decl. Ex. 1 at Nov. 24, 2008 ( "Drafted email to Markey Setting up T/C."); Feb 24, 2012 ("Receipt and Review of Email from SCR to SNN re: Wyeth Boxes of Files. Requests they be moved to the conference room for sorting."); *id.* at Feb. 8, 2006 ("Drafting, Receipt and Review of Emails from SKS to co-counsel re Expenses. SKS Transmits Excel sheet of out of pocket expenses.").

making in-house copies are not reimbursable, as they constitute the overhead associated with running a law firm."); *Conservation Law Found.,* 767 F. Supp. 2d at 259 ("administrative expenses, including photocopying, postage, and office supplies . . . are properly considered the overhead associated with running a law firm, and this Court considers them included in the hourly rates paid to the attorneys").

The $130,000 sought for "Computer Services/Storage" is similarly problematic.  As an initial matter, even if this cryptic entry is read generously to refer to the cost of hosting a production database, data hosting costs are subject to reduction where the requesting party provides insufficient support for the amount sought.  *See, e.g.*, *D.G. ex rel. Strickland v. Yarbrough*, No. 08-CV-074-GKF-FHM, 2013 WL 1343151, at *9 (N.D. Okla. Mar. 31, 2013) (25% reduction to claim for data hosting costs because of deficiencies in documentation).  The barebones description here falls far short on this basis.  More to the point, a reduction is especially warranted in this case, given that this line item actually represents a request for reimbursement of the rent for that portion of the Sakla Law Firm's offices where the computer was kept.  Office space, of course, is the paradigmatic example of overhead, and is definitively not reimbursable.  *See Showtime Entm't LLC v. Ammendolia*, No. 10-CV-40194-FDS, 2016 WL 1555685, at *8 (D. Mass. Apr. 15, 2016) (hourly rate is designed to cover overhead expenses inherent in operating a law practice, including renting office space).

Relator LaCorte's summary of costs and expenses also includes several entries that appear to be separate from the costs incurred by the Sakla Law Firm.  *See* Sakla Decl. Ex. 2 ("LaCorte – Boone & Stone $4,923.00," "LaCorte – Travel expenses $20,000.00," "LaCorte – Lurie & Krupp $30,705.22," and "Lacorte – Art Leech, Esq. $7,900.00").  Three of these entries appear to represent legal fees incurred by other law firms.  If this is true, Relator LaCorte's

submission provides no basis for evaluating any of the factors relevant to a fee award – for example, how these firms contributed to the outcome of the case, what tasks they undertook, how many hours they devoted to those tasks, or what billing rates they charged for that work.  The support for these requests is thus wholly inadequate, and reimbursement should be denied in its entirety.  *Calhoun v. Acme Cleveland Corp.,* 801 F.2d 558, 560 (1st Cir.1986) (records lacking "the nature of the work performed during the hour or hours in question should be refused."). Similarly, the records provide no explanation for the "LaCorte – Travel expenses" entry.  If this refers to travel undertaken by Relator LaCorte himself, the submission fails to indicate what that travel was for or why it was necessary, given that Relator LaCorte was never deposed and was of course never called to testify at trial.  If it instead refers to travel by the attorneys at the other law firms referenced in Exhibit 2 to the Sakla Declaration, no reimbursement is warranted for the reasons just enumerated.

Removing these items from Relator LaCorte's costs request, as indicated in Exhibit 2 to Mr. O'Connor's Declaration, Wyeth respectfully submits that an award of $73,035.62 in costs is appropriate.

## CONCLUSION

For the foregoing reasons, Wyeth respectfully requests that the Court enter an order setting Relator LaCorte's  statutory attorneys' fees under 31 U.S.C. § 3730(d)(1) at no more than $2,517,146.88, and associated costs at no more than $73,035.62.

Dated:  July 20, 2016                           Respectfully submitted,


                                               /s/ Brien T. O'Connor
                                               Brien T. O'Connor (BBO No. 546767)
                                               John P. Bueker (BBO No. 636435)
                                               ROPES & GRAY LLP
                                               Prudential Tower
                                               800 Boylston Street
                                               Boston, Massachusetts 02199
                                               (617) 951-7000 (Tel.)
                                               (617) 951-7050 (Fax)
                                               Brien.O'Connor@ropesgray.com
                                               John.Bueker@ropesgray.com

                                               *Attorneys for Defendant Wyeth*


## CERTIFICATE OF SERVICE

   I, Brien T. O'Connor, hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via ECF electronic filing on July 20, 2016.


                                               /s/ Brien T. O'Connor
                                               Brien T. O'Connor