UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al*, LAUREN KIEFF, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C. A. No. 03-12366-DPW |
| WYETH PHARMACEUTICALS, INC., et al, | ) ) ) | |
| Defendant. | ) ) | |
| UNITED STATES OF AMERICA *et al*, WILLIAM LACORTE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C. A. No. 06-11724-DPW |
| WYETH, et al, | ) ) | |
| Defendant. | ) ) | |
| And | ) ) | |
| VEZINA & GATTUSO, LLC and BOONE & STONE. | ) ) ) | |
| Intervening Plaintiffs, | ) ) | |

## <u>COMPLAINT-IN-INTERVENTION</u>

With leave of Court, Vezina & Gattuso, LLC (V&G) and Boone & Stone (B&S), through

their undersigned counsel, file this Complaint-in-Intervention to assert their claims for

enforcement of their attorneys' lien and security interest for attorneys' fees and litigation

expenses against the relator's share of one of the two relators in this action, Relator Dr. William

St. John LaCorte (LaCorte), to be paid from the proceeds of the settlement with the Defendant Wyeth which the Court have been deposited in the registry of this Court (the *res*) (ECF 551, 554, 555)[1] showing the Court as follows:

## Nature of the Case

1.      This is an intervention proceeding brought by V&G and B&S to assert and enforce their claim of attorneys' lien and security agreement against LaCorte's Relator's Share portion of the recovery in this action from the Defendant Wyeth arising out of the Fee Agreement LaCorte entered into jointly with V&G, B&S, and the Sakla Law Firm, APLC (SLF) on June 24, 2004 attached as ***Exhibit 1*** employing his lawyers to provide him joint legal representation and services in all five of his Federal False Claims Act cases ongoing at that time.[2]

## Parties, Jurisdiction, and Venue

1.      Intervening Plaintiff Vezina & Gattuso, LLC is a Louisiana law firm organized under the laws of that state as a limited liability company to practice law.  Vezina & Gattuso is a citizen of the State of Louisiana.

2.      Intervenor Boone & Stone is a Georgia law firm.  It is a partnership of Georgia professional corporations, David Wm. Boone, P.C. and William S. Stone, P.C.

3.      Relator LaCorte is an individual a citizen of State of Florida.  LaCorte is subject to the jurisdiction of this Court because he has asserted this action against Wyeth (LaCorte's

---

[1] Relator Lauren Kieff is entitled to a portion of the Relator's Share to be paid to LaCorte pursuant to a Co-Relator's Agreement she entered into with him.  The United States and States who are parties to these consolidated False Claims Act cases wanted to pay only a single Relator's Share and decided to pay it to LaCorte, presumably because LaCorte's Wyeth case was filed first before Kieff's Wyeth case was filed.  V&G and B&S make no claim against Kieff's Relator's Share and suggest that it should be disbursed to her as soon as the Clerk receives the deposit of the entire Relator's Share into the Court's registry.

[2] That Fee Agreement replaced and superseded all prior fee agreements LaCorte had entered into with his attorneys in this case and his four other False Claims Act cases.

Wyeth case) originally in the United States District Court for the Eastern District of Louisiana (the Federal Court (E.D.La.) then consented to its transfer to this Court, and he is a party to this action by reason of his own voluntary submission to its jurisdiction, and by reason of transacting business in the Commonwealth of Massachusetts.  Mass. Gen. Laws Ann. ch. 223A, § 3.

4.     The Court's original jurisdiction over LaCorte's and Kieff's Wyeth cases was founded on 28 U.S.C. §§ 1331 *et seq,*, specifically 31 U.S.C. §§ 3729, 3730, 1345, and 3732.

5.     The Court has supplemental jurisdiction over this intervention action pursuant to 28 U.S.C. § 1367(a) because it involves claims that are so related to the claims in LaCorte's Wyeth case within this Court's original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution. In addition, this Court has ordered possession of the *res*, which is the property against which Intervenors claim, pursuant to a hearing conducted on May 17, 2016 in this matter and an ensuing Order dated May 20, 2016 at R. Doc#551, retaining jurisdiction over this matter.

6.     V&G and B&S claim a lien and security interest in the Relator's Share to be paid to LaCorte from the proceeds of the settlement to be paid by Wyeth under the Wyeth case settlement agreement for their attorneys' fees and litigation expenses arising out of their Fee Agreement for providing LaCorte legal representation in his claims in LaCorte's Wyeth case jointly with SLF.[3]

7.     LaCorte's Relator's Share of the recovery is currently in the custody of the Clerk of the United States District Court for the District of Massachusetts pursuant to the Court's order dated May 20, 2015 (ECF 551), and constitutes the *res* upon which V&G and B&S ask this Court to act and order paid according to the legal rights of all interested parties.  Relator LaCorte

---

[3] The Sakla Law Firm is a Louisiana Professional Law Corporation, and is a citizen of Louisiana.

has agreed to a settlement with V&G and B&S, later agreed to by SLF, that 38% of the relator share in the registry of the court plus accrued interest constitutes contingency attorneys' fees to be paid to his counsel, and the Court has granted the parties joint motion filed as part of the settlement to dismiss with prejudice LaCorte's motion to quash the attorneys' lien filed by V&G and B&S in this action.  (ECF 623 and 626).

8.      Venue of LaCorte's and Keiff's Wyeth cases is proper in this district pursuant to 31 U.S.C. § 3372.

9.      Venue of this intervention action may properly be laid in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the offense or omissions giving rise to the claim asserted by the V&G and B&S occurred in this district, and the property that is subject of their claims in this action is situated in this district as shown below.

## Procedural Background

10.      LaCorte's Wyeth case was filed initially on March 21, 2002 in the United States District Court for the Eastern District of Louisiana (Federal Court (E.D.La.)) as Civil Action No. 02-0851.

11.      Kieff's Wyeth case was filed on November 24, 2003 in this Court as Civil Action No. 03-12366-DPW.

12.      On or about September 18, 2006, at the request of the United States, and with LaCorte's consent, LaCorte's Wyeth case was transferred to this Court and consolidated with the Kieff's Wyeth case.

13.     In or about February, 2016, Wyeth agreed to settle the claims in this matter and pay (1) to the United States the sum of $413,248,820.00 and (2) to the Participating States[4] who participate in the Medicaid Program the sum of $371,351,180.00.

14.     The United States, on behalf of itself, offered to pay a Relator's Share to LaCorte totaling $64,000,000.00 for the United States' share of the recovery from Wyeth.

15.     The Participating States, on behalf of themselves, offered to pay a Relator's Share to LaCorte totaling $34,367,074.19 for the Participating States' share of the recovery from Wyeth.

16.     LaCorte's and Kieff's Wyeth cases have been settled, and the Court has entered a provisional dismissal on May 5, 2016 (ECF 526), reserving the rights of the parties to re-open the case upon a showing of good cause if the settlement was not consummated.

17.     The Wyeth FCA settlement agreement with the United States was fully executed and became effective on April 27, 2016.

18.     On or about April 29, 2016 Wyeth paid the amounts due under the Wyeth case settlement agreement to the United States and the Participating States.

19.     The Participating States which have *qui tam* statutes that allow payment of a relator's share offered to pay a Relator's Share to LaCorte totaling not more than $34,367,074.19 for their share of the recovery from Wyeth.

20.     LaCorte readily agreed to accept those amounts as the Relator's Share of the recovery from Wyeth without any controversy or negotiation.

---

[4]The Participating States include, but are not limited to, California, District of Columbia, Delaware, Florida, Hawaii, Illinois, Indiana, Louisiana, Massachusetts, Michigan, Montana, New Hampshire, New Mexico, Nevada, New York, Tennessee, Texas, Virginia, and Wisconsin.

21.     A copy of V&G and B&S's Notice of Claim that was served on all parties to this action on March 8, 2008, except Wyeth, has been filed in this action on May 6, 2016.  (ECF 552).

22.     On March 16, 2016, Sakla and SLF commenced a separate declaratory judgment action in the United States District Court for the District of Massachusetts against V&G and B&S, styled S*herif K. Sakla, M.D., et al, Plaintiffs, v. Vezina & Gattuso, LLC, et al, Defendants*, CA No. 1:16-cv-10533 (the Sakla DJ action).  (Sakla DJ action ECF 1).

23.     In the Sakla DJ action, Sakla and SLF admit that the Fee Agreement is the binding agreement with LaCorte, V&G and B&S, Sakla and the SLF, and that under the Fee Agreement LaCorte owes his attorneys a contingent fee of 40% of his Relator's Share recovery in LaCorte's Wyeth case.

24.     However, in the Sakla DJ action, Sakla and SLF sought a judgment declaring that V&G and B&S were discharged by LaCorte "for cause," *i.e.* the very same alleged professional misconduct and neglect in investigating and prosecuting LaCorte's FCA claims LaCorte, Sakla, and SLF falsely asserted in LaCorte Merck case and in LaCorte malpractice and fraud case before their false claims in these cases were disavowed as untrue and unfounded by LaCorte *in judicio*, and dismissed with prejudice in 2008 by the Federal Court (E.D. La.) and again in this action (ECF 623 and 626) with LaCorte's consent in spite of Sakla's and SLF's bad faith, stubbornly litigious, and frivolous refusal to sign the Merck Settlement Agreement.

25.     In the Sakla DJ action, Sakla and SLF also sought a judgment declaring that Fee Contract is illegal, void and unenforceable for the very same reasons LaCorte asserted in the Merck FCA case before their false claims were dismissed with prejudice in 2008 by the district court, E.D. La., with the consent of LaCorte, Sakla, and SLF after LaCorte made his judicial

admission they were untrue and unfounded.  This despite their assertion that the Fee Agreement is binding on the parties.  This same claim was asserted by LaCorte in his motion to quash the attorneys' lien claimed by V&G and B&S in this action which has now been dismissed with prejudice.  (ECF 623 and 626).

26.     In the Sakla DJ action Sakla and SLF also sought a judgment declaring that V&G and B&S are not entitled to recover their fees and expenses under the Fee Agreement in LaCorte's Wyeth case, and that SLF alone is entitled to the full 40% contingent fee on LaCorte's Relator's share under the same Fee Agreement Sakla and SLF claim is illegal, void and unenforceable.  This same claim was asserted by LaCorte in his motion to quash the attorneys' lien claimed by V&G and B&S in this action which has now been dismissed with prejudice. (ECF 623 and 626).

27.     On April 7, 2016 V&G and B&S filed a motion to dismiss the Sakla DJ action for lack of subject matter jurisdiction, among other reasons.  (ECF 6, 7 in that action).

28.     On April 20, 2006 LaCorte filed a motion to reopen case and quash attorney's lien.  (ECF # 535 and attachments).

29.     In his motion, LaCorte asserted that the attorneys' fees he owes his attorneys under the Fee Agreement is 33-1/3% of his Wyeth Relator Share, not 40% of it.  He also asserted that V&G and B&S are entitled to recover no attorneys' fees under the Fee Agreement, but are entitled to recover compensation for their services, if at all, under a *quantum meruit* theory.  LaCorte, V&G, B&S, and SFL have conclusively resolved these issues in a Joint Motion to Effectuate Settlement in this action (ECF 621) by agreeing that the contingency attorneys' fees for his counsel total 38% plus interest of the Relator LaCorte's relator's share which contingency attorneys' fees remain in the registry of this court.  As noted above, Relator LaCorte agreed as

part of the settlement to dismiss with prejudice his motion to quash the attorneys' lien filed by V&G and B&S. The Court has granted the joint motion and dismissed with prejudice LaCorte's motion to quash the attorneys' lien filed by V&G and B&S.

30.     On April 26, 2016 V&G and B&S filed a motion in LaCorte's Merck case to enforce the Merck Settlement Agreement between V&G, B&S, Vezina, Boone, Stone, Sakla, SLF, and LaCorte.[5]  (ECF 380 in that action).

31.     On May 4, 2006 Sakla and SLK filed a motion for joinder in LaCorte's motion in his Wyeth case to quash.  (ECF 537).  At that time, Sakla and SLK were not parties to LaCorte's Wyeth case, and had no standing to quash the lien and security interest created by the Fee Agreement, which they have previously admitted in court filings irrevocably assigns 40% of LaCorte's recovery in his Wyeth case as attorneys' fees to V&G and B&S and SLF to be paid equally, 1/3 to each law firm.

32.     On May 4, 2016 V&G and B&S filed a response in opposition to LaCorte's motion to quash.  (ECF 538).

33.     On May 17, 2016 this Court held a status conference in both this action and the Sakla DJ action.  (ECF 541, 542, and 550).

34.     On May 20, 2016 this Court entered an order granting V&G and B&S's motion to dismiss the Sakla DJ action.  (ECF 555).  (ECF 17, 18 in the Sakla DJ action).

35.     On May 20, 2016 this Court entered an order agreed to by all interested parties, ordering the United States and the signatory participating States to pay the entire Wyeth Relator's share into the registry of this Court.  (ECF 551).

---

[5]LaCorte's Merck case is a civil action against *Merck* known as *United States ex rel William St. John LaCorte, Plaintiff, v. Merck & Co., Inc., Defendant,* Civil Action No. 99-3807 in the United States District Court for the Eastern District of Louisiana in which LaCorte asserted FCA claims against Merck for alleged payments Merck received by submitting false claims pursuant to a Medicaid fraud scheme involving a drug called Pepcid.

36.     This Court also ordered the clerk hold all of LaCorte's Wyeth Relator's Share in the registry of this Court pending further order of the Court.  (ECF 551).

37.     This Court also ordered that it would not take any action on the pending motion to quash filed by LaCorte (ECF 535) and joined in by SLF and Sakla (ECF 537) until the Federal Court (E.D.La.) ruled on the motion to enforce settlement agreement and judgment in LaCorte's Merck case filed by V&G and B&S.  (ECF 551).

38.     This Court also ordered that if the Federal Court (E.D.La.) declined to exercise jurisdiction over the motion to enforce the settlement and its judgment, this Court will retain LaCorte's Wyeth Relator's Share in its registry, take jurisdiction over the parties and the claims to those funds, conduct such proceedings as may be necessary and appropriate to determine the rights of the parties, and issue orders directing disposition of those funds by the clerk of that court. (ECF 551).

39.     On June 1, 2016 the Federal Court (E.D.La.) exercised its discretion to deny the motion to enforce the judgment entered on September 18, 2008 in LaCorte's Merck case and deferred to this Court to exercise its jurisdiction to resolve the dispute over attorneys' fees due to be paid to V&G, B&S, and SLF in LaCorte's Wyeth case.  (ECF 396 in that action).

40.     On June 2, 2016 V&G and B&S filed a Notice in this action notifying the Court of the ruling of the Federal Court (E.D.La.) declining jurisdiction over V&G and B&S's motion for enforcement.  (ECF 552).

41.     In the interim between May 17, 2016 and June 21, 2016, V&G and B&S negotiated a settlement of the present controversy over the *res*.  LaCorte agreed to dismiss his motion to quash in this action with prejudice and to pay 40% of the *res* on deposit (including accrued interest) as attorneys' fees with 2/3 of that amount to be paid to V&G and B&S as their

attorney's fees as directed by them in exchange for the V&G and B&S's agreement to consent to payment of 60% of the *res* on deposit (including accrued interest) to LaCorte. LaCorte also wanted "world peace," meaning an end to all disputes and controversies between himself and V&G and B&S. V&G and B&S agreed to this as well, drafted a proposed settlement agreement implementing this agreement, presented the agreement to LaCorte and his designated attorney E. John Litchfield of New Orleans, Louisiana, and worked with Mr. Litchfield to get LaCorte to execute the agreement.

42. On June 20, 2016, Mr. Litchfield notified V&G and B&S that LaCorte had changed his mind and refused to execute the settlement agreement or propose any revisions at all to make the proposed draft agreeable to him.

43. Also on June 20, 2016, Sylvija Strikis from the Kellogg Huber firm advised V&G and B&S's attorney Mr. O'Hara, that she was entering an appearance on behalf of LaCorte and Sakla and would be filing a motion on June 21, 2016 on LaCorte's behalf seeking an order permitting him to withdraw 60% of the *res* on deposit in the Court, with no mention of LaCorte performing as promised under the settlement agreement by dismissing his motion to quash with prejudice.

44. On June 21, 2016, V&G and B&S filed their motion to intervene in this action and for leave to file this Complaint in Intervention.

45. On November 15, 2016, Relator LaCorte and V&G and B&S filed a Joint Motion to Effectuate Settlement in which it was agreed, among other things, that Relator LaCorte relator's share was 62% of the funds held in the registry of court, along with accrued interest on that portion of the Relator's Share and that the 38% balance of the funds held in the Registry of the Court (plus accrued interest) constitutes contingency attorneys' fees to be allocated among

V&G, B&S and SLF.  Relator LaCorte also requested, and the court granted, that Relator's Motion to Re-Open Case and Quash Attorney's Lien, ECF No. 535, be dismissed with prejudice. V&G and B&S requested that their Claim of Attorneys' Lien (ECF No. 535-1) be modified to state a claim of lien as to only the 38% of the Relator LaCorte's share (plus accrued interest) that will remain in the Registry of the Court after the distribution of the Relator's portion of the Relator's share pursuant to the settlement reached.  Relator LaCorte requested that the court permit the withdrawal of his Opposition to Former Counsel's Motion for Leave to Intervene, ECF No. 585.

46.     On November 30, 2016, the Court granted Relator LaCorte and V&G and B&S's Joint Motion to Effectuate Settlement (ECF 623 and 626).    The Court allowed V&G and B&S's motion for leave to intervene and also allowed SLF's motion for leave to intervene (ECF 623 and 626).   In its November 30, 2016 Order (ECF 623 and 626), the Court dismissed Relator LaCorte's Motion to Reopen Case and Quash Attorneys' Lien with prejudice.  (ECF 535).

## FACTS COMMON TO ALL COUNTS

### LaCorte Fee Contracts With Attorneys

47.     In December 1999, LaCorte was represented in five FCA claims, including LaCorte's Wyeth case, by SLF and its predecessor, Sakla & Slack (S&S).

48.     Sakla and Todd Slack (Slack) dissolved S&S in or around March, 2000 and thereafter Slack withdrew from his attorney-client relationship with LaCorte.

49.     Sakla formed the SLF which assumed LaCorte's representation in each of his FCA cases.

50.     SLF associated V&G as co-counsel in each of LaCorte's FCA cases with LaCorte's consent.

51.     On July 3, 2001 the United States expressly declined to intervene in LaCorte's Pharmerica case,[6] while the case was still filed under seal, and AmeriSourceBergen and Pharmerica had not been served with summons and complaint.

52.     SLF and V&G each contributed to the preparation and filing of the initial complaint in LaCorte's Wyeth case on March 21, 2002.

53.     On January 21, 2003, the United States expressly declined to intervene in LaCorte's Merck case, while the case was still filed under seal, and Merck had not been served with summons and complaint.

54.     The seal was lifted in the Merck case on January 23, 2003, Merck was served with summons and complaint, and litigation ensued without the participation of the United States.

55.     In or about May, 2003, SLF and V&G associated B&S as their co-counsel in each of LaCorte' FCA cases with LaCorte's consent.

56.     On June 24, 2003, the United States declined to intervene in LaCorte's Wyeth case, while the case was still filed under seal, and Wyeth had not been served with summons and complaint.

57.     The SLF attorney who worked on LaCorte's FCA cases primarily was Sakla, although SLF associate Stephanie Reuther did, from time to time, work on the case.

58.     Sakla and Reuther are duly licensed attorneys in Louisiana, and Sakla is admitted to practice in the Federal Court (E.D.La.)

---

[6]LaCorte's Pharmerica case was a civil action against AmerisourceBergen Corp. and its subsidiary, Pharmerica, Inc. known as *United States ex rel. William St. John LaCorte, M.D. v. AmerisourceBergen Corp., et al.*, Civil Action No. 02-3168, in the United States District Court for the Eastern District of Louisiana, in which LaCorte asserted FCA claims against AmerisourceBergen Corp. and its subsidiary, Pharmerica, for alleged payments Pharmerica received by submitting false claims pursuant to a Medicaid fraud scheme involving a drug called Pepcid.

59.     The V&G attorney who worked on LaCorte's FCA cases primarily was J. Marc Vezina.

60.     Vezina is a duly licensed attorney in Louisiana, Georgia, Michigan, and Texas, and is admitted to practice in the Federal Court (E.D.La.) as well as Federal District Courts and Courts of Appeal in other states and circuits, as well as the U.S. Supreme Court.

61.     The B&S attorneys who worked on LaCorte's FCA cases primarily were David Wm. Boone and William S. Stone, and from time to time Arthur Leach until he left B&S and started his own firm.

62.     Boone is a duly licensed attorney in Georgia and Florida, admitted to practice in Federal district courts and courts of appeal in Georgia and Florida, among other states, and he became admitted to practice in the Federal Court (E.D.La.) as a visiting attorney.

63.     Stone is a duly licensed attorney in Georgia and Alabama, admitted to practice in Federal district courts and courts of appeal in Georgia and Alabama, among other states, and he became admitted to practice in the Federal Court (E.D.La.) as a visiting attorney.

64.     Leach is a duly licensed attorney in Georgia, admitted to practice in Federal district courts and courts of appeal in Georgia, among other states, and he became admitted to practice in the Federal Court (E.D.La.) as a visiting attorney.

65.     LaCorte employed the law firms of V&G, B&S, and SLF jointly to provide him with legal representation to institute and prosecute a claim or suit against Wyeth and four other pharmaceutical related enterprises to recover damages, penalties, and attorneys' fees for violations of the FCA.

66.     Kieff's Wyeth case was filed under seal on November 24, 2003.

67.     On June 24, 2004 LaCorte entered into the Fee Agreement with V&G, B&S, and SLF attached hereto as **Exhibit 1**, and incorporated by reference, setting forth the attorneys' fees LaCorte agreed to pay jointly to them in equal 1/3 shares for jointly representing him concerning all his FCA claims against Wyeth, Merck & Company, Inc., Omnicare, Inc.,[7] Pharmerica, Inc.,[8] and Tap Pharmaceuticals, Inc.[9]  The Fee Agreement did not provide for division of attorneys' fees on a case-by-case basis depending on the amount of work or services provided by each law firm.  Under the Fee Agreement attorneys' fees were to be divided equally among V&G, B&S, and SLF, 1/3 to each law firm.

68.     LaCorte's delay in executing the Fee Agreement was due to his desire to have the Fee Agreement reviewed by, and obtain the advice of, his independent counsel, Malcom A. Meyer.

69.     Mr. Meyer is an experienced, competent, capable, and well-respected attorney in New Orleans, Louisiana, who is very well versed and familiar with the professional and ethical responsibilities of attorneys and the ethical, professional, and legal requirements of attorney representation agreements and attorneys' fees.

---

[7]LaCorte's Omnicare case was a civil action against Omnicare, Inc. known as **United States ex rel. William St. John LaCorte, M.D. v. Omnicare, Inc.**, Civil Action No. 00-3733, in the United States District Court for the Eastern District of Louisiana in which LaCorte asserted FCA claims against Omnicare, Inc. for alleged payments Omnicare received by submitting false claims pursuant to a Medicaid fraud scheme based on offering secret price rebates to induce therapeutic interchange or substitution of prescription medication without the approval of the patient's physician.

[8]LaCorte's Pharmerica case was a civil action against AmerisourceBergen Corp. and its subsidiary, Pharmerica, Inc. known as **United States ex rel. William St. John LaCorte, M.D. v. AmerisourceBergen Corp., et al.**, Civil Action No. 02-3168, in the United States District Court for the Eastern District of Louisiana in which LaCorte asserted FCA claims against AmerisourceBergen Corp. and its subsidiary, Pharmerica, for alleged payments Pharmerica received by submitting false claims pursuant to a Medicaid fraud scheme involving a drug called Pepcid.

[9]LaCorte's TAP case was a civil action against TAP Pharmaceuticals, Inc. known as **United States ex rel. William St. John LaCorte, M.D. v. TAP Pharmaceuticals, Inc.**, Civil Action No. 03-1483, in the United States District Court for the Eastern District of Louisiana in which LaCorte asserted FCA claims against TAP for alleged payments TAP received by submitting false claims pursuant to a Medicaid fraud scheme involving a drug called Prevacid.

14

70.     In negotiating the Fee Agreement between LaCorte and V&G, B&S, and SLF, and in determining whether it was a legal, valid, enforceable contract, LaCorte was represented by his independent counsel of his own choosing, Malcolm A. Meyer.

71.     LaCorte relied on Mr. Meyer's legal advice and counsel in negotiating the Fee Agreement with V&G, B&S, and SLF, determining whether it was a legal, valid, enforceable contract, and executing the Fee Agreement.

72.     LaCorte did not rely upon any representations made or advice given to him by V&G and B&S as an inducement to execute the Fee Agreement.

73.     With Mr. Meyer's advice and concurrence, LaCorte modified the original typewritten version of the Fee Agreement by inserting revised terms in handwriting that he, V&G, B&S, and SLF had agreed to during the negotiations.

74.     Mr. Meyer's name appears in the document word processing filename at the top left corner of page 6 of the Fee Agreement.

75.     The Fee Agreement superseded all prior fee agreements LaCorte had executed retaining his attorneys in each of LaCorte's FCA cases, including LaCorte's Merck and Wyeth cases.

76.     In the Fee Agreement LaCorte agreed that all attorneys' fees jointly payable under the Fee Agreement were irrevocably assigned jointly to V&G, B&S, and SLF, to be paid equally to each law firm 1/3 to V&G, 1/3 to B&S, and 1/3 to SLF.

77.     V&G, B&S, and SLF entered into a separate fee sharing agreement among themselves consistent with LaCorte's understanding that they would share the attorneys' fees jointly payable under the Fee Agreement equally, 1/3 to be received by each law firm, and they

would share in bearing litigation expenses, including Augusta Capital funding fees, equally, 1/3 to be borne by each law firm.

78.     LaCorte understood and agreed that B&S could provide access to non-recourse litigation expense financing through an agreement it had with an attorney's litigation expense funding company, Augusta Capital, LLC.

79.     LaCorte understood and agreed that in order for B&S to provide access to non-recourse litigation expense financing the Fee Agreement, as applied between and among V&G, B&S, and SLF themselves, had to be governed by Georgia law because Augusta Capital, LLC offered its non-recourse litigation financing plan to Georgia attorneys with approval by the State Bar of Georgia, but had not applied for or received approval of the Louisiana State Bar to offer such financing in Louisiana to Louisiana attorneys.

80.     Pursuant to the Fee Agreement V&G, B&S, and SLF jointly represented LaCorte in LaCorte's Wyeth case.

81.     Pursuant to the Fee Agreement V&G, B&S, and SLF jointly represented LaCorte in LaCorte's Merck case.

82.     Pursuant to the Fee Agreement V&G, B&S, and SLF jointly represented LaCorte in LaCorte's Omnicare case.

83.     Pursuant to the Fee Agreement V&G, B&S, and SLF jointly represented LaCorte in LaCorte's Pharmerica case.

84.     Pursuant to the Fee Agreement V&G, B&S, and SLF jointly represented LaCorte in LaCorte's TAP case.

85.     On or about April 1, 2004, while LaCorte's Wyeth case was under seal, the United States notified LaCorte and his attorneys that Kieff's Wyeth case existed and was under seal.

86.     At or about that same time, the United States notified Kieff and her attorneys that LaCorte's Wyeth case existed and was under seal.

87.     With the consent of the United States, the seals in both LaCorte's Wyeth case and Kieff's Wyeth case were partially lifted in a limited way to enable LaCorte and Kieff, and their respective attorneys, to examine the claims in each case, and determine whether there were any "first-to-file" issues that needed to be addressed by the United States, LaCorte, and Kieff, and to give LaCorte and Kieff an opportunity to resolve any such issues by agreement among themselves.

88.     In 2005-2006 V&G and B&S negotiated with attorneys for Kieff to resolve any potential dispute as to which of the two Relators was entitled to receive a Relator's share by reason of being the "first-to-file" FCA claims relating to Wyeth's marketing and sale of a drug known as Protonix.

89.     V&G and B&S were successful in reaching an agreement with Kieff's attorneys for LaCorte and Keith to share in the gross Wyeth Relator's share to be paid to LaCorte in LaCorte's Wyeth case or to Kieff in Kieff's Wyeth case or to both LaCorte and Kieff in both Wyeth cases, rather than litigate any "first-to-file" issues among themselves.

90.     On March 9, 2006, LaCorte and Kieff entered into the Co-Relators Agreement.

91.     In early August 2006, the United States requested LaCorte and Kieff to dismiss from their respective FCA actions those claims one or both of them was asserting which the United States was not interested in pursuing.  The United States informed LaCorte and Kieff it

would continue to decline to intervene on those claims and theories.  The United States wanted

simplify and streamline both LaCorte's and Kieff's Wyeth cases to leave pending only the claims

in which the United States desired to intervene and pursue.

92.     In early September 2006, as requested by the United States, and with permission

of the Federal Court (E.D.La.), LaCorte dismissed without prejudice those claims in LaCorte's

Wyeth case that the United States informed him it was not interested in pursuing and would

continue to decline intervention as to those claims and theories.

93.     In early September 2006, as requested by the United States, and with permission

of this Court, Kieff dismissed without prejudice those claims Kieff's Wyeth case that the United

States informed him it was not interested in pursuing and would continue to decline intervention

as to those claims and theories.

94.     In mid-September, 2006, the United States requested LaCorte to consent to

transfer of LaCorte's Wyeth case to this Court for consolidation with Kieff's Wyeth case.

95.     On or about September 18, 2006, at the request of the United States with

LaCorte's consent, LaCorte's Wyeth case was transferred to this Court and consolidated with

Kieff's Wyeth case in this Court, where both cases remained under seal.

96.     Beginning in or about late 2006 or early 2007 Sakla began suggesting and

representing to LaCorte that V&G, B&S, Vezina, Boone, and Stone had conflicts of interest, and

were actively working against him for the benefit of themselves, the United States, and those

States that participated in LaCorte's Pharmerica, Merck, and Wyeth cases.

97.     Sakla suggested and represented to LaCorte that V&G, B&S, Vezina, Boone, and

Stone were guilty of unprofessional and unethical acts against LaCorte's interests, and were not

allowing Sakla and LaCorte to have access to documents some of the Participating States had acquired through their investigation.

98.     Of course, as attorneys for LaCorte it was the obligation of V&G, B&S, Vezina, Boone, and Stone to provide any assistance to the United States and Participating States, since one of the principal factors considered in determining the amount of the Relator's Share to be awarded LaCorte is how much assistance the relator has provided the federal and state government in recovering from these defendants in LaCorte's FCA cases.   See 31 USC §3730(d).

99.     Sakla was aware at all times that the Participating States that had acquired these documents were under no obligation to share these documents with LaCorte's attorneys at all.

100.    Sakla was aware at all times that the Participating States that had acquired these documents were concerned about the need to protect LaCorte's status as an "original source" of the information he had provided to the United States and the Participating States and decided to have only one of LaCorte's attorneys, Vezina, assist them in reviewing and analyzing these documents to prevent LaCorte's recollection from becoming contaminated by facts of which he had no knowledge when he filed the Wyeth case.

101.    Sakla was aware at all times that he had agreed to this limitation of access to the documents so that Vezina could obtain the information for LaCorte's benefit and use at the proper time.

102.    Sakla previously informed LaCorte that Vezina had done a great job in building a good working relationship with the State attorneys and in securing this access to these important documents the States had acquired in their investigation.

103.    Sakla decided to change his representations about this document access arrangement, for personal reasons.

104.    Sakla's conduct, suggestions, and representations were intended to, and succeeded in causing serious friction and conflicts between Dr. LaCorte and V&G, B&S, Vezina, Boone, and Stone, resulting in a deterioration of their attorney-client relationship.

105.    In or about the summer of 2006, Vezina's ongoing research yielded information about another relator who had filed an action against Merck that had been removed to Federal Court.

106.    In August 2006 Vezina contacted Sanjay Bhambhani, an attorney with the United States Department of Justice in Washington, D.C., in an attempt to learn whether this development had any impact on LaCorte's Merck case because of potential "first-to-file" issues and to request an opportunity to discuss the cases with the other relator and work out some co-relator agreement as had been done in Kieff's Wyeth case.

107.    After further investigation, Vezina learned that another FCA complaint had been filed against Merck in the Federal Court for the Eastern District of Pennsylvania (E.D.Pa.) by a relator named Dean Steinke, who was represented by Steve Cohen and Mark Kleiman.  Vezina was acquainted with Cohen and Kleiman.  The Steinke Merck case involved a similar fraudulent pricing scheme as the one LaCorte claimed in LaCorte's Merck case involving the sale of the Merck drugs Zocor and Vioxx.

108.    In 2006 attorneys for the defendants in LaCorte's Pharmerica case approached the United States and LaCorte's attorneys and proposed a compromise resolution of that case.

109.    The United States, through the United States Attorney for the Eastern District of Louisiana, responded that it did not oppose the proposed compromise resolution and dismissal of

LaCorte's Pharmerica case, provided it was done without prejudice to the United States' claims and interests.

110.    The United States took no position on Pharmerica's offer to pay reasonable attorneys' fees and litigation expenses to LaCorte's attorneys.

111.    However, the United States objected to any direct or indirect payment of any kind in any amount to LaCorte or for his benefit, including any charitable donation made at LaCorte's direction.

112.    This position was taken by the United States because no payment was to be made to the United States under the FCA by Pharmerica, the United States FCA claims were not being released or dismissed with prejudice, and therefore LaCorte was not entitled to receive a Relator's Share under the FCA.

113.    The United States wished to avoid a resolution that appeared as though Pharmerica had made payments as partial compensation for any money it had received as a result of violations of the FCA.  Directly or indirectly making any payment of any kind, in any amount to LaCorte, or for his benefit, at his direction could arguably constitute payment of a Relator's Share that would create the issue the United States wished to avoid which could jeopardize the United States' pursuit of the claims asserted in LaCorte's Pharmerica case if it decided to assert those claims in its own right in the future against Pharmerica.

114.    To facilitate the settlement of LaCorte's Pharmerica case, B&S, V&G, and SLF agreed with LaCorte that they would waive any attorney's fee and apply the entire amount of the Pharmerica settlement proceeds to pay off Dr. LaCorte's obligation under the Fee agreement to pay litigation expenses advanced by his attorneys and funded by Augusta Capital, LLC in all five of his FCA cases, including LaCorte's Wyeth and Merck cases.

115.    LaCorte agreed that all of the settlement proceeds in LaCorte's Pharmerica case were to be paid to LaCorte's attorneys through the B&S trust account, and used to pay off his obligation under the Fee agreement to pay litigation expenses advanced by his attorneys and funded by Augusta Capital, LLC in all five of his FCA cases.

116.    The United States was informed about this application of the attorneys' fees and litigation expenses to be paid by Pharmerica in the resolution and dismissal of LaCorte's Pharmerica case, and it did not object to this application of these attorneys' fees and litigation expenses.

117.    In the fall of 2006 LaCorte was attempting to gather information concerning Merck's pricing program for Zocor and Vioxx in an effort to assert FCA claims against Merck concerning the pricing of these drugs and create a "first-to-file" issue with Steinke so he could negotiate a co-relator agreement with him and obtain a portion of his relator's share in Steinke's Merck case.

118.    In early 2007 Vezina learned that through settlement discussions in Steinke's Merck case the United States, the Participating States, and Steinke were getting close to reaching a settlement concerning the FCA claims relating to Zocor and Vioxx.

119.    Sakla seized on Vezina's acquaintance with Steinke's attorneys to suggest and represent falsely to LaCorte that Vezina was exploiting a conflict of interest for his own benefit, and should not be permitted to negotiate with Steinke's attorneys.

120.    Sakla persuaded and induced LaCorte to exclude Vezina and appoint Sakla as his lead counsel and managing lawyer to conduct all negotiations with Steinke's attorneys, with the assistance of another New Orleans, Louisiana attorney who had previously represented LaCorte, Normand F. Pizza.

121.    Sakla began the negotiations with Steinke's attorneys by threatening to intervene in Steinke's Merck case and seeking to disrupt and delay the settlement of that case.

122.    That prompted Steinke's attorneys to respond to Sakla's threats by asserting a claim on Steinke's behalf to LaCorte's Merck case and offering a stalemate.

123.    Sakla initially refused until the autumn of 2007 when Normand Pizza recommended that LaCorte and Steinke each abandon any claim to the other's Merck cases.

124.    In or about early 2007 LaCorte began demanding, with Sakla's support, that V&G and B&S agree to pay a portion of the Pharmerica settlement funds as a charitable contribution by LaCorte or his family members to an educational institution, with disclosure to or approval of the United States.  V&G and B&S refused to participate in that underhanded and fraudulent scheme, and counseled LaCorte to abandon the idea.

125.    This irritated LaCorte and caused him to move closer to Sakla for advice, and disregard advice from V&G and B&S that he did not want to hear.  At this point, Sakla became LaCorte's "yes-man" who gave LaCorte whatever advice he wanted to hear, and not independent, well considered, and practical legal advice.

126.    To increase the tension between LaCorte and V&G and B&S, in or about early 2007 Sakla knowingly and falsely represented to LaCorte that the accounting for litigation expenses by V&G and B&S was not accurate, and that the Augusta Capital, LLC fees for providing non-recourse litigation financing should be borne solely by B&S, with the balance be paid jointly to B&S, V&G, and SLF.

127.    By these false representations Sakla convinced and induced LaCorte to demand that the Pharmerica settlement funds be paid to the SLF trust account for distribution.  Strongly suspecting that Sakla intended to disburse the funds other than as agreed with some portion

going to LaCorte, directly or indirectly, and to Sakla directly or indirectly, without disclosure to the United States, V&G and B&S would not agree to handle disbursement of the Pharmerica funds through the SLF trust account, but insisted that they be paid through a B&S trust account to assure the funds would be disbursed as agreed and the Augusta Capital, LLC interest would be protected and paid.

128.    By these false representations Sakla convinced and induced LaCorte to refuse to consummate the Pharmerica settlement, and to file a motion in the Federal Court (E.D.La.) for judicial review of attorneys' fees, attorney's expenses, and finance charges.

129.    V&G and B&S were forced to respond to the motion and its baseless allegations of misconduct on their part, and filed a motion to enforce the settlement of LaCorte's Pharmerica case.

130.    On August 14, 2007, United States District Judge Carl J. Barbier (E.D.La.) held a hearing and entered an order enforcing the Pharmerica settlement LaCorte and Sakla originally had agreed to, and directing that the Pharmerica settlement proceeds be paid to the B&S trust account for application to case expenses and Augusta Capital, LLC fees in all of LaCorte's five FCA cases as previously agreed.  At the hearing Sakla disavowed his representations to LaCorte that the accounting for litigation expenses by V&G and B&S, agreed that the exact amount claimed by V&G and B&S was owed, and Judge Barbier included Sakla's admission in his order.

131.    In 2007 the United States, Participating States, and LaCorte were engaged in settlement discussions with Merck in LaCorte's Merck case.

132.    While these settlement discussions were going on with Merck, the United States and the Participating States were obtaining authority to file notices of intervention in case the settlement discussions Merck failed to produce a settlement.

133.    In August 2007, the United States, through Assistant United States Attorney Sharon Smith, requested LaCorte's counsel Vezina to sign *pro hac vice* motions for the various Assistant Attorneys General representing the Participating in LaCorte's Merck case.

134.    Vezina communicated this request was to LaCorte.   LaCorte engaged his independent counsel Malcolm A. Meyer to review the request from an ethical standpoint.  Mr. Meyer discussed the request with Vezina, Boone, Stone, and Sakla, all of whom supported agreeing to the United States' request to assist the Participating States in securing the *pro hac vice* admission of their assistant attorneys general to appear as their counsel in LaCorte's Merck case.

135.    It is now apparent that Sakla supported this request for Vezina to sign as local counsel sponsoring the motions for *pro hac vice* admission of these assistant attorneys general for the Participating States was an effort to set up Vezina and create the pretense of a conflict of interest he could use to persuade and induce LaCorte to discharge V&G "for cause."

136.    Mr. Meyer advised LaCorte that the request to assist the Participating States did not raise ethical issues, and would be supportive of the Participating States' claims.

137.    Mr. Meyer further advised LaCorte that providing such support to the Participating States would benefit him later in any discussions concerning the amount they would agree to pay him as a part of LaCorte's Merck Relator's Share.

138.    Mr. Meyer also advised LaCorte that refusal of the request to assist the Participating States would impose a burden on those states to seek alternate means to secure the

*pro hac vice* admission of their assistant attorneys general to appear as their counsel in LaCorte's Merck case, and could be seen by the Participating States as hindering their efforts to assert their claims against Merck.

139.   On September 6, 2007, LaCorte sent an email to Vezina, with a copy to Mr. Meyer, authorizing Vezina to sign the Participating States' motions for *pro hac vice* admission of their Assistant Attorneys General to appear as their counsel in LaCorte's Merck case.

140.   With LaCorte's consent and approval, Vezina signed these motions for *pro hac vice* admission of their assistant attorneys general to appear as their counsel in LaCorte's Merck case.

141.   Once enrolled as *pro hac vice* counsel in LaCorte's Merck case, these assistant attorneys general were authorized to make their own filings on behalf of their respective Participating States.

142.   On or about October 2, 2007, LaCorte executed an agreement with Steinke in which each of them waived and abandoned any claim to a relator's share in the other's Merck cases.  By that agreement LaCorte abandoned any claim he may ever have had against Merck based on its pricing of its drugs Zocor and Vioxx.  Sakla signed this document as LaCorte's attorney who approved it on LaCorte's behalf.

143.   In October 2007 an agreement in principle to settle of LaCorte's Merck case was reached among the United States, the Participating States, LaCorte, and Merck.

144.   On December 17, 2007, the United States, through its counsel, Sanjay Bhambhani, made LaCorte an offer to pay LaCorte's Merck Relator's Share by agreement during a telephone call with LaCorte, Vezina, and Stone.

145.    LaCorte readily agreed to the Merck Relator's Share offer without any attempt or effort to negotiate a higher Merck Relator's Share by sending Mr. Bhambhani an email accepting the offer while the telephone call was still in progress.

146.    During 2006 and 2007, at Sakla's continued urging, LaCorte became more and more distrustful of V&G, B&S, Vezina, Boone, and Stone and began making unfounded accusations of conflicts of interest.

147.    At Sakla's urging, LaCorte insisted that the proper fee in LaCorte's Merck case under the Fee Agreement was only 33-1/3% per cent of his recovery, not 40% despite the fact the 40% fee had become irrevocably assigned jointly to B&S, V&G, and SLF because the United States had declined to intervene.

148.    During 2007 LaCorte purported to discharge or suspend B&S and V&G "for cause" several times, only to withdraw the discharge in a day or two thereafter.

149.    On these occasions, the amount of the contingent fee LaCorte owed B&S, V&G, and SLF in LaCorte's Merck case under the Fee Agreement was always a point of contention, and one of the reasons LaCorte asserted for the discharge or suspension.  LaCorte made it clear to V&G, B&S, Vezina, Boone, and Stone that he was discharging or suspending them to coerce them to agree to reduce the 40% contingent fee LaCorte owed under the Fee Agreement to a 33-1/3% contingent fee.  On each occasion LaCorte rescinded the discharged and reinstated V&G and B&S as his attorneys under the Fee Agreement when his ploy did not succeed.

150.    The settlement agreement between the United States, LaCorte, and Merck was executed on February 6, 2008.

151.    At mid-day on January 23, 2008 at Sakla's urging and with his collaboration and assistance, LaCorte filed a declaratory judgment action against V&G and B&S (LaCorte's DJ

action).  However, LaCorte did not name SLF or Sakla as defendants in that action.[10]  Sakla had retained Donald L. Hyatt to provide LaCorte with opinions that the Fee Agreement did not comply with certain rules of professional responsibility, and was therefore void.

152.    In LaCorte's DJ action he sought a judgment declaring that the fee payable jointly to V&G, B&S, and SLF was only 33-1/3% of LaCorte's Merck Relator's share rather than 40% of that Relator's share as called for by the Fee Agreement.

153.    LaCorte did not cause summons to be issued or served on V&G or B&S in LaCorte's DJ action.

154.    Late in the evening on January 23, 2008, at Sakla's urging, LaCorte discharged V&G as his attorneys in all his FCA cases, including LaCorte's Merck and Wyeth cases, thereby preventing V&G from providing any further legal services to him or on his behalf in either case pursuant to the Fee Agreement.

155.    LaCorte falsely asserted that his discharge of V&G was "for cause" based on alleged professional misconduct and neglect in the investigation and prosecution of LaCorte's claims in LaCorte's Merck and Wyeth cases.

156.    LaCorte's falsely asserted reasons for his discharge of V&G include, but are not limited to, "failure to follow instructions, failure to provide accurate and timely advice, disclosure of confidential information without authority, repeated communications designed or calculated to pressure me into courses of action I considered to be against my interest, refusal to let me review my own file materials, failure to plead matters as directed to assert all claims

[10] LaCorte's DJ action was a civil action seeking a declaratory judgment against *B&S* and *V&G* known as ***William St. John LaCorte, Plaintiff, v. Boone & Stone, et al, Defendants,*** Civil Action No. 08-800, in the Civil District Court for the Orleans Parish of Louisiana.

available to me, failure to render timely and/or complete accounting for costs, expenses, and fees, and a general breakdown of communications between us in our respective roles as client."

157.    In discharging V&G, LaCorte acted in bad faith in asserting the false pretense that V&G was discharged "for cause" in order to fabricate support for his false claim that V&G was not entitled its 1/3 share of the contingent fee under the Fee Agreement in either LaCorte's Merck case, and to prevent V&G from receiving any fee at all for the professional legal services and representation V&G provided to LaCorte in LaCorte's Wyeth case.

158.    LaCorte did not inform V&G and B&S that earlier on January 23, 2008 he had filed the LaCorte declaratory judgment action against them, but not SLF or Sakla.

159.    The Federal Court (E.D.La.) set a hearing in LaCorte's Merck case for February 7, 2008, at 9:30 a.m. CST to address matters regarding concluding the Merck settlement.

160.    At 4:27 a.m. CST (5:27 a.m. EST) on February 7, 2008, LaCorte sent an email discharging B&S as his attorneys in all his FCA cases, including LaCorte's Merck and Wyeth cases, thereby preventing B&S from providing any further legal services for him or on his behalf in LaCorte's Wyeth case pursuant to the Fee Agreement.

161.    LaCorte falsely asserted that his discharge of B&S was "for cause" based on alleged professional misconduct and neglect in the investigation and prosecution of LaCorte's claims in LaCorte's Merck and Wyeth cases.

162.    LaCorte's falsely asserted reasons for his discharge of B&S were:  "Sherif [Sakla] has provided me with a copy of this e-mail indicating that you are represented in a conflict against me by the lead attorney in the Vioxx cases. 'Our lawyer in New Orleans is Russ Herman.'  It appears that Information concerning federal false claims suit has been provided to

attorneys who actively litigating multiple active civil suits against Merck.  You have given me no choice but to terminate Boone and Stone for cause."

163.    There was not, and could not be, any conflict of interest concerning any claims LaCorte believed he had against Merck.  LaCorte had already waived and abandoned any claims against Merck relating to Vioxx and Zocor in his October 2, 2007 co-relators' agreement with Steinke.  Furthermore, LaCorte had already signed the release to conclude the settlement with Merck and thereby released Merck from any claims whatsoever he had or would have if the claims accrued before the effective date of the Merck FCA settlement agreement as well as any claims he might have the future if such future claims accrued before January 1, 2018, i.e. 10 years after the effective date of the Merck FCA settlement agreement.[11]  Therefore, LaCorte had no claims against Merck that could possibly have created a conflict of interest.

164.    LaCorte's claim based on Sakla's false representation to him that V&G, B&S, Vezina, Boone, and Stone had provided Russ Herman with information concerning FCA claims in LaCorte's Merck case is untrue.

165.    The Vioxx cases in which Mr. Herman was involved was multi-district litigation against Merck for personal injuries and death caused by its drug Vioxx, and nothing to do with

---

[11]  The Merck FCA settlement agreement provided:

> 4.      In consideration of the obligations of Merck in this Settlement Agreement, conditioned upon Merck's full payment of the Settlement Amount plus interest, the Relator, for himself, and any person or entity acting on his behalf or asserting his rights, fully and finally releases, waives and forever discharges the Merck Released Entities and their present and former directors, officers, agents and employees from any claims, demands, expenses, debts, liabilities, obligations, costs, damages, injuries, actions and causes of action ( collectively in this paragraph, "claims") that the Relator ever had, has, or may have in the future that first accrued prior to the Effective Date, which shall include claims and conduct occurring after the Effective Date if the claim first accrued prior to the Effective Date. Further, Relator, for himself, and any person or entity acting on his behalf or asserting his rights, fully and finally releases, waives and forever discharges the Merck Released Entities and their present and former directors, officers, agents and employees from any claims under the Federal False Claims Act, 31 United States Code §§ 3729-3733 or any state analogue thereto that may first accrue prior to January 1, 2018, which shall include claims and conduct occurring after January 1, 2018 if the claim first accrued prior to January 1, 2018.

any FCA claims against Merck.  Neither V&G, B&S, Vezina, Boone, and Stone anyone else acting on their behalf ever provided Mr. Herman with any information concerning any FCA claims related to Vioxx.  Such information was completely irrelevant and immaterial to the attorneys' fees controversy in which Mr. Herman's firm was engaged to represent V&G, B&S, Vezina, Boone, and Stone.

166.    Sakla persuaded and induced LaCorte to discharge V&G and B&S by making these false representations about their conduct that LaCorte now knows were not accurate and truthful.

167.    In discharging B&S, LaCorte acted in bad faith in asserting the false pretense that B&S was discharged "for cause" in order to fabricate support for his false claim that B&S was not entitled its 1/3 share of the contingent fee under the Fee Agreement in either LaCorte's Merck case, and to prevent B&S from receiving any fee at all for the professional legal services and representation B&S provided to LaCorte in LaCorte's Wyeth case.

168.    The discharge of V&G and B&S procured and induced by Sakla prevented both V&G and B&S from performing any further work or providing any further professional legal services to LaCorte under the Fee Agreement.

169.    As a matter of both Georgia and Louisiana law, V&G and B&S's failure to perform further services on LaCorte's behalf under the Fee Agreement after their bad faith discharge is excused, and the condition of performance of further services is regarded as fulfilled because LaCorte and Sakla's wrongful conduct caused prevented V&G and B&S from performing such further services.  O.C.G.A. § 13-4-23 and La.Civ.Code Ann. ar. 1772.[12]

---

[12] The same legal rule applies under Massachusetts law.  *Peabody N.E., Inc. v. Town of Marshfield*, 426 Mass. 436, 441, 689 N.E.2d 774, 779 (1998); *Mansfield v. Hodgdon*, 147 Mass. 304, 308, 17 N.E. 544, 549 (1888); *De Blois v. Boylston & Tremont Corp.*, 281 Mass. 498, 507, 183 N.E. 823, 826 (1933); *Rigs v. Sokol*, 318 Mass. 337, 345, 61

170.     LaCorte did not discharge SLF as his attorneys in any of his FCA cases, including LaCorte's Merck case and LaCorte's Wyeth case, and did not prevent SLF from providing further legal services on his behalf in the LaCorte's Wyeth case pursuant to the Fee Agreement.

171.     After February 7, 2008 LaCorte did not enter into a new fee agreement with SLF or Sakla to provide legal representation to him concerning his FCA claims in LaCorte's Wyeth or Merck cases, but SLF and Sakla continued to provide legal services to LaCorte pursuant to the June 24, 2004 Fee Agreement.

172.     As of February 7, 2008, the last possible date on which either V&G or B&S were allowed or permitted by LaCorte and Sakla to perform any professional legal services on LaCorte's behalf in any of his FCA cases, the United States had not intervened in either LaCorte's Wyeth case or Kieff's Wyeth case.  At that point the United States had filed notices in each of these cases expressly declining to intervene in either of them.

173.     Upon being notified at the settlement hearing in LaCorte's Merck case on February 7, 2008 that LaCorte had discharged V&G and B&S, the Federal Court (E.D.La.) ordered all LaCorte's Merck Relator share in the settlement of that case to be paid directly into the registry of that court and held there until further order of the court.

174.     V&G and B&S intervened in LaCorte's Merck case and asserted claims to enforce their attorneys' lien and security interest arising under the Fee Agreement against LaCorte's Merck Relators' share held in the registry of the Federal Court (E.D.La.) to recover their 40% contingent attorneys' fees jointly payable to V&G, B&S and SLF under the Fee Agreement.

---

N.E.2d 538, 542 (1945).  And, it is generally the legal rule throughout the United States.  See Restatement (Second) of Contracts §§ 245 and 253 (1981).

175.     On or about April 14, 2008, LaCorte asserted counterclaims against V&G and B&S in LaCorte's Merck case alleging they were discharged "for cause" consisting of their wrongful and unprofessional conduct in their investigation and prosecution of his FCA cases, including LaCorte's Merck and Wyeth cases, malpractice, fraud, breach of fiduciary duties owed to him, conflicts of interest, and claims that the Fee Agreement was void and unenforceable because it is illegal and against public policy, among other claimed misconduct.  (ECF 231 in that action).

176.     On May 22, 2008, LaCorte, through his attorney procured by Sakla, Donald L. Hyatt, filed the LaCorte malpractice and fraud action against V&G, B&S, Vezina, Boone, and Stone, claiming unspecified damages for alleged wrongful and unprofessional conduct in their investigation and prosecution of his FCA cases, including LaCorte's Merck and Wyeth cases, consisting of legal malpractice, fraud, breach of fiduciary duties to him, conflicts of interest, and claims that the Fee Agreement was void and unenforceable because it is illegal and against public policy, among other claims.[13]

177.     On August 11, 2008 LaCorte, V&G, B&S, Boone, Stone, Vezina, SLF, Sakla, and Slack entered into the Merck Settlement Agreement resolving all remaining claims between V&G, B&S, Boone, Stone, Vezina, on the one hand and LaCorte, SLF, and Sakla on the other, that was announced in open court and agreed to by all parties in open court, and is evidenced in a transcript of that hearing on file in LaCorte's Merck case as R.Doc. 375.

---

[13] LaCorte's malpractice and fraud action is a civil action against V&G and B&S and individual members of those law firms, Boone, Stone, and Vezina, known as *William St. John LaCorte, Plaintiff, v. David William Boone, et al, Defendants,* Civil Action No. 08-800, in the Civil District Court for the Orleans Parish of Louisiana, which was removed to the United States District Court for the Eastern District of Louisiana, assigned Civil Action No. 08-800 by that court, and consolidated with LaCorte's Merck case per the local rules of the Federal Court (E.D.La.).

178.    The Merck Settlement Agreement was reduced to a written document that was executed by LaCorte, V&G, B&S, Vezina, Boone, and Stone.  A copy of that Merck Settlement Agreement is attached hereto as ***Exhibit 2*** and incorporated by reference.

179.    In the Merck Settlement Agreement LaCorte, SLF, Sakla, V&G, Vezina, B&S, Boone, and Stone each agreed that the attorney's fee jointly payable to V&G, B&S, and SLF under the Fee Agreement for providing LaCorte with joint legal representation in LaCorte's Merck case was 40% of LaCorte's Merck Relator's share and accrued interest on the principal thereof then on deposit in the registry of the Federal Court (E.D.La.), to be shared by V&G and B&S and SLF equally, 1/3 of the fee to be paid to each law firm.

180.    In the Merck Settlement Agreement LaCorte, SLF, Sakla, V&G, B&S, Vezina, Boone, and Stone each agreed to entry of an order paying 1/3 of the attorneys' fees to V&G, 1/3 of the attorneys' fees to B&S, retaining the 1/3 of the attorneys' fees owed to SLF in the registry of the court until further order of the court, and paying the remaining 60% of LaCorte's Merck Relator's share to LaCorte.

181.    SLF and Sakla refused to sign the Merck Settlement Agreement document or perform it.

182.    On August 26, 2008 V&G and B&S, Boone, Stone, and Vezina filed a motion to enforce the Merck Settlement Agreement according to its terms which were consistent with the 40% contingent fee called for by the Fee Agreement.

183.    LaCorte joined in that motion to enforce the Merck Settlement Agreement according to its terms.

184.    The Federal Court (E.D.La.)'s order entered on September 18, 2008 granting the motion to enforce the Merck Settlement Agreement and reduced that agreement to the judgment

of that court, directing the clerk of that court to distribute 40% of the LaCorte's Merck Relator's share on deposit in the registry as attorneys' fees 1/3 to V&G, 1/3 to B&S, to retain the remaining 1/3 of those attorneys' fees on deposit in that court's registry pending further order of the court resolving the claims to those funds by Sakla and his former partner Todd Slack, and to distribute the remaining 60% of LaCorte's Merck Relator's share to LaCorte.  (ECF 318 in that action).

185.     On October 16, 2008, pursuant to the Merck Settlement Agreement, the Federal Court (E.D.La.) entered the order dismissing with prejudice all of LaCorte's, SLF, and Sakla's counterclaims and claims asserted against V&G and B&S in LaCorte's Merck case. (ECF 323 in that action).

186.     On October 16, 2008, pursuant to the Merck Settlement Agreement, the Federal Court (E.D.La.) entered the order dismissing with prejudice LaCorte's malpractice and fraud action against V&G, B&S, Vezina, Boone, and Stone.  (ECF 18 in that action).

187.     In Part V, ¶ 3 of the Merck Settlement Agreement LaCorte acknowledged:

3.     LaCORTE acknowledges that BOONE & STONE and VEZINA and SAK.LA and all of the attorneys in those firms provided him with adequate legal representation within the standard of care for attorneys generally under similar circumstances and conditions and within applicable professional standards in all his *qui tam* cases and in particular, the *Merck* litigation.  LaCORTE is not taking and will not take any actions or affirmative steps to pursue any claim relating to the Merck litigation in any other forum;

188.     In Part V, ¶ 6 of the Merck Settlement Agreement LaCorte agreed:

6.     The Parties and SLACK agree that all claims made against one another (except as set forth in paragraph 9 herein), counterclaims, complaints in interventions, or cross-claims *in the Merck* litigation will be dismissed, with prejudice, that all claims made by LaCORTE in the. case of *LaCorte v. Boone & Stone, et al.,* No. 08-800, Civil District Court for 1he Parish of Orleans, State of Louisiana; and that all claims made by LaCORTE in the Merck litigation case of *LaCorte v. David William Boone,* et *al.,* No. 08-3673, United States District Court for the Eastern District of Louisiana will be dismissed with prejudice.

189.    In Part V, ¶ 7 of the Merck Settlement Agreement LaCorte and Sakla both covenanted and warranted:

> 7.    LaCORTE and SAKLA covenant and warrant that, except for their counterclaims 1n the *Merck* litigation and L„CORTE' s claims in 1he case of *LaCorte v. Boone & Stone, el al.,* No. 08-800, Civil District Court for the Parish of Orleans, State of Louisiana; and in the case of *LaCorte v. David William Boone, et al.,* No. 08-3673, United States District Court for the Eastern District of Louisiana, they have not filed and shall not file in the future any action making any claim against BOONE & STONE and/or VEZINA, or their attorneys, employees, or insurers, asserting legal, equitable, contractual or administrative rights or claims of any nature whatsoever, including claims for joint venture funds or damages for breach of fiduciary duty or breach of contract <u>arising out of the alleged acts, omissions, transactions or occurrences up to and including the date of this Agreement</u>; (Emphasis added).

190.    In SLF's Memorandum in Support of In Rem Motion by The Sakla Law Firm, APLC To Withdraw Attorneys' Fees From the Registry of the Court SLF, through their attorney who represented him in the Merck case and now in this action, made specific, unequivocal representations to the U.S. District Court that when Dr. LaCorte and the three law firms signed the June 2004 Representation Contract, he "irrevocably assigned the attorney's contingency fees to The Sakla Law Firm, APLC, Vezina & Gattuso, and Boone & Stone, to be divided equally among the three law firms, 1/3rd to The Sakla Law Firm, APLC, 1/3rd to Vezina & Gattuso, and 1/3rd to Boone & Stone."  A true copy of SLF's Memorandum in Support of In Rem Motion by The Sakla Law Firm, APLC To Withdraw Attorneys' Fees From the Registry of the Court, R. Doc # 334-3, dated November 18, 2008, is attached as ***Exhibit 3***.

191.    The representation was also made by SLF's attorney, Mr. Ryan, in SLF's Statement of Uncontested Material Fact which was filed in the *U.S. ex rel. Dr. LaCorte v. Merck*, with the same Representation Contract at issue in the *Wyeth* case. In Paragraph 23 of SLF's Statement of Uncontested Material Fact, Sakla's attorney represented to the court:

> In June, 2004, Dr. LaCorte irrevocably assigned the attorney's contingency fees to The Sakla Law Firm, APLC, Vezina & Gattuso, and Boone & Stone, to be

divided equally among the three law firms, 1/3 to The Sakla Law Firm, APLC, 1/3 to Vezina & Gattuso, and 1/3 to Boone & Stone.

A true copy of SLF's's Statement of Uncontested Material Fact filed in the *U.S. ex rel. Dr. LaCorte v. Merck* case is attached as ***Exhibit 4.***

192.   LaCorte, SLF and Sakla are estopped and precluded by the judgment of the Federal Court (E.D. La.) in LaCorte's Merck case and the Merck Settlement Agreement, which includes their own covenant and warranty never to assert such spurious claims against the V&G and B&S again in the future in any proceeding whatsoever.  LSA-C.C. Art. 3080.  Since Sakla and SLF are in contractual privity with LaCorte under the Fee Agreement and the Merck Settlement Agreement, and made the same covenants and warranties as LaCorte, they are likewise precluded by that same judgment and the Merck Settlement Agreement from ever asserting such spurious claims against the V&G and B&S again in the future in any proceeding whatsoever, including this action.

193.   Through and including their discharge, V&G and B&S were actively involved in every aspect of the preparation of LaCorte's Wyeth case, including amendments to the original complaint, development of the facts and legal strategies, ongoing negotiations with the United States, the Participating States, and ongoing cooperative efforts with counsel for Co-relator Kieff.

194.   Even after LaCorte discharged V&G and B&S in 2008, they continued to provide substantial support and professional services, assisting the United States and the Participating States at their request.  V&G and B&S provided substantial assistance to the United States and the Participating States in advancing legal theories, developing the case, drafting pleadings, helping prepare the federal and state attorneys for oral arguments, and pursuing the FCA claims against Wyeth.

195.    V&G and B&S had a legal right to continue to provide this assistance to protect their lien and contractual security interest in their attorneys' fees, and to use ordinary care to mitigate their damages they have been caused by LaCorte's, Sakla's, and SLK's wrongful conduct.

196.    As a member of a joint venture with V&G and B&S to represent LaCorte in his FCA cases under the joint Fee Agreement, SLK and its agents and employees, including Sakla, owed fiduciary duties to V&G and B&S not to interfere with and prevent their ability to provide continued representation to LaCorte, and not to usurp their economic opportunities arising out of representation of LaCorte under the Fee Agreement and misappropriate attorneys' fees under the Fee Agreement to SLK to the exclusion of attorneys' fees under the Fee Agreement to SLK to the exclusion of V&G and B&S.

197.    By reason of the foregoing SLF and Sakla have breached fiduciary duties owed to its joint venturers V&G and B&S, and proximately caused them harm and injury by interfering with their ability to collect their attorneys' fees without controversy, trouble and expense.

198.    SLF and Sakla are estopped to deny their representations made in the *U.S. ex rel Dr. LaCorte v. Merck* case, including, but not limited to, the representation made in their Statement of Uncontested Material Fact that "In said June 2004 Representation Contract, Dr. LaCorte specified that all prior fee agreements were superseded, and Dr. LaCorte made an irrevocable assignment to the three law firms for each of them to divide the total attorney's contingency fee as follows:  1/3 to The Sakla Law Firm APLC, 1/3 to Boone & Stone and 1/3 to Vezina & Gattuso."  (***See Exhibit 4***.)

## Conditions Precedent

199.    All conditions precedent to the bringing of this Complaint in Intervention and V&G and B&S' right to the relief sought herein have occurred, have been performed or have been excused.

## Applicability of Foreign Law

200.    The Intervening Plaintiffs rely on Georgia Law as the law governing the Fee Agreement between B&S and LaCorte and SLF.

201.    The Intervening Plaintiffs rely on Louisiana Law as the law governing the Fee Agreement between V&G and LaCorte and SLF.

202.    The Intervening Plaintiffs rely on Georgia Law as the law governing the Fee Agreement and issues relating to division of fees by V&G, B&S, and SLF who were jointly retained to represent LaCorte in his FCA cases.

203.    The Intervening Plaintiffs rely on Louisiana Law as the law governing the Merck Settlement Agreement in LaCorte's Merck cases between V&G and LaCorte and SLF which was made the judgment of the Federal Court (E.D.La.) in LaCorte's Merck case.

## COUNT 1

## Attorney's Lien Claim

204.    Paragraphs 1 through 202 are incorporated by reference.

205.    V&G and B&S's claims are asserted against LaCorte and LaCorte's Relator's Share he is to receive by agreement with the United States and Participating States under LaCorte's Wyeth case settlement agreements with Wyeth, Inc., Wyeth LLC, and Pfiser, Inc., pursuant to the express lien upon and security interest in the LaCorte's "Recovery" in the Wyeth case created by the Fee Agreement, ¶ 3:

206.    V&G and B&S also claim an attorneys' lien also pursuant to Georgia law, O.C.G.A. § 15-19-14, Louisiana law, La. R.St. 37:218, and Massachusetts law, M.G.L.A. 221 § 50 against LaCorte's Relator's Share he is to receive under the Wyeth case settlement agreement.

207.    By reason of the foregoing, V&G and B&S are each entitled to recover 1/3 of the agreed upon 38% contingency attorneys' fees of LaCorte's Relator's Share he received by agreement with the United States and Participating States under LaCorte's Wyeth case settlement agreements with Wyeth, Inc., Wyeth LLC, and Pfizer, Inc., together with interest and costs.

208.    LaCorte has acted in bad faith, has been stubbornly litigious, and has put the Intervening Plaintiffs to unnecessary trouble and expense.  Therefore, they are authorized to recover their reasonable expenses of litigation, including attorneys' fees, as a part of damages. O.C.G.A. § 13-11-6 and Louisiana Code of Civil Procedure LSA CCP Art 863

WHEREFORE, Intervening Plaintiffs demand judgment against the *res* on deposit in the registry of this Court for the amount of 2/3 of the agreed upon 38% contingency attorneys' fees of LaCorte's Wyeth Relator's Share together with interest and costs, and all their reasonable expenses of litigation, including attorneys' fees.

Intervening Plaintiffs further request an order directing the Clerk of this Court to pay to each of them from the *res* on deposit in the registry of this Court 1/3 of the agreed upon 38% contingency attorneys' fees of LaCorte's Wyeth Relator's Share and accrued together all their reasonable expenses of litigation, including attorneys' fees, and all costs.

Intervening Plaintiffs further request such other and further relief as justice requires.

## COUNT II

## Security Interest Claim

209.    Paragraphs 1 through 202 are incorporated by reference.

210.    The V&G and B&S also claim a security interest in LaCorte's Relator's Share expressly granted by to them by LaCorte in the Fee Agreement, ¶ 3, pursuant to Georgia law, O.C.G.A. §§ 11-9-201, 11-9-203, 11-9-301, 11-9-308, 11-9-309, and 11-9-315 and Louisiana Law, La. Stat. Ann. §§ 10:9-201, 10:9-203, 10:9-301, 10:9-308, 10: 9-309, 10: 9-315.[14] Massachusetts Law, M.G.L.A. 106 §§ 9-201, 9-203, 9-301, 9-308, 9-309, and 9-315.

211.    By reason of the foregoing, V&G and B&S are each entitled to recover 1/3 of the agreed upon 38% contingency attorneys' fees of LaCorte's Relator's Share he is to receive by agreement with the United States and Participating States under LaCorte's Wyeth case settlement agreements with Wyeth, Inc., Wyeth LLC, and Pfizer, Inc., together with interest and costs.

212.    LaCorte has acted in bad faith, has been stubbornly litigious, and has put the Intervening Plaintiffs to unnecessary trouble and expense.  Therefore, they are authorized to recover their reasonable expenses of litigation, including attorneys' fees, as a part of damages. O.C.G.A. § 13-11-6 and Louisiana Code of Civil Procedure LSA CCP Art 863.

WHEREFORE, Intervening Plaintiffs demand judgment against the *res* on deposit in the registry of this Court for the amount of 2/3 of the agreed upon 38% contingency attorneys' fees of LaCorte's Wyeth Relator's Share together with interest and costs, and all their reasonable expenses of litigation, including attorneys' fees.

Intervening Plaintiffs further request an order directing the Clerk of this Court to pay to each of them from the *res* on deposit in the registry of this Court 1/3 of the agreed upon 38% contingency attorneys' fees of LaCorte's Wyeth Relator's Share and accrued together all their reasonable expenses of litigation, including attorneys' fees, and all costs.

---

[14]Massachusetts Law is substantially identical to the Georgia and Louisiana Law of Secured Transactions, since all three states have adopted the Uniform Commercial Code.  M.G.L.A. 106 §§ 9-201, 9-203, 9-301, 9-308, 9-309, and 9-315.

Intervening Plaintiffs further request such other and further relief as justice requires.

Respectfully submitted, this 21st day of December, 2016.

**VEZINA & GATTUSSO, LLC**
**and BOONE & STONE**

By their attorneys,

/s/ Christopher R. O'Hara_____
Christopher R. O'Hara (BBO#548611)
TODD & WELD, LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
Dated:  December 21, 2016                    cohara@toddweld.com

**CERTIFICATE OF SERVICE**

I, Christopher R. O'Hara, hereby certify that this document has been filed through the ECF system, will be sent electronically to the registered participants as identified on the notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/  Christopher R. O'Hara_____

Dated:  December 21, 2016