UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br> *ex rel.* WILLIAM LaCORTE, <br><br> Plaintiffs, <br><br> v. <br><br> WYETH, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 06-cv-11724-DPW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## RELATOR WILLIAM ST. JOHN LACORTE'S MOTION FOR RELEASE OF FUNDS

Relator William St. John LaCorte ("Relator") moves this Court for entry of an Order releasing 62% of the Relator's Share currently held in the registry of the Court, plus interest, pursuant to the parties' agreement to do so. *See* ECF No. 621 (Relator's and Former Counsel's Motion to Effectuate Settlement, "Settlement Agreement").

Relator agreed with Vezina & Gattuso LLC and Boone & Stone ("Former Counsel") that he was entitled to *only* 62% of the Relator's Share in the Court's registry (plus interest thereon) precisely so that he could avoid entanglement in the unsettled dispute between his current and former lawyers about the remaining 38% (plus interest thereon). At the time of the agreement, all parties understood that Former Counsel would continue their dispute with Sherif K. Sakla/The Sakla Law Firm ("Sakla") about the remaining 38% (plus interest thereon) in the Court's registry. But Former Counsel have transformed the negotiations over what should have been a simple mutual release referenced in the Settlement Agreement into a dispute about the merits of Former Counsel's position on the dispute among the attorneys.

In particular, Relator proposed a simple release that contained a provision stating that it would have no effect on the pending attorneys' fee dispute between Former Counsel and The Sakla Law Firm.  At every turn, Former Counsel have struck such a provision from each draft release Relator has proposed – and its place, they have inserted various confusing and complex provisions that could only be designed to affect the outcome of their dispute with Sakla.

Because the Court required the assent of all parties – including Former Counsel and Sakla – before granting a motion for settlement, Relator is at an impasse.  He does not want to play *any* role in the dispute between his current and former lawyers, but given the insistence of Former Counsel to extend the release between Relator and Former Counsel to cut off Sakla's rights, Relator has no way to secure the agreement of all parties.  Former Counsel will not agree to a release that includes a statement that it is not intended to affect the pending attorneys' fee dispute, and The Sakla Law Firm will not agree to a joint motion based on a release that lacks such language.  As a result, Relator must ask the Court to intervene to order the release of funds *to which all parties agree he is entitled*.

**1.    The Parties' Unsuccessful Negotiation of a Mutual Release**

In accordance with this Court's oral order on November 29, 2016, Vezina & Gattuso LLC and Boone & Stone ("Former Counsel"), The Sakla Law Firm, and Relator have agreed to release 62% of the Relator's Share (plus interest thereon) currently in the Court's Registry to Relator LaCorte.  *See* ECF Nos. 626 (transcript of conference); 621 (Relator's and Former Counsel's Joint Motion to Effectuate Settlement); 638 at 2-3 (stating that Former Counsel agree "that the amount of such contingent attorney's fee is 38% of the principal and accrued interest of the funds on deposit in the Court's registry" and denying that there is any dispute among the parties over how much of the funds in the Court's registry should be disbursed to Relator).

Sakla and Relator LaCorte have agreed to a joint motion to release those funds. Former Counsel have conditioned agreement to that motion on Relator's agreement to a separate mutual release between Relator and Former Counsel. To consummate his settlement with Former Counsel, on December 15, 2016, Relator LaCorte proposed a simple, two-page mutual release, a copy of which is attached hereto as Exhibit A. Importantly, that proposal included a provision stating that the release would not in any way affect the rights of both Former Counsel and The Sakla Law Firm to pursue their claims to the remainder of the funds held in the Court's registry.

Almost three weeks later, on January 4, 2017, Former Counsel responded with an entirely new 16-page proposed release, a copy of which is attached hereto as Exhibit B. Former Counsel's proposed release is significantly more complex and contains numerous terms that were not contemplated by the Settlement Agreement. Among other things, that draft reserves Former Counsel's right to pursue claims against the remaining funds held in the registry of the Court, but contains no such reservation for Sakla. *Compare* Ex. B at ¶ 9 (reserving *only* Former Counsel's rights) *with id.* ¶¶ 1, 7 (releasing the rights of Dr. LaCorte "and all other Persons claiming any legal or equitable right or owing any legal or equitable obligation under or through him"). Former Counsel's proposed release also purports to preclude Dr. LaCorte from giving honest fact testimony to this Court regarding the roles his lawyers played, even if he is compelled to do so. *See id.* ¶ 8 (precluding Dr. LaCorte from "in any way aid[ing]" claims against Former Counsel). The 16-page release proposed by Former Counsel also purports to require all of Dr. LaCorte's attorneys to waive their affirmative duty to report unethical conduct to attorney disciplinary bodies, in violation of applicable legal ethics rules. *See id.* at 4 (purporting to release "regulatory disciplinary measures" and those based on "rule of professional conduct"); *see also generally* Model R. Prof. Conduct 8.3. Finally, Former Counsel's draft did not contain any statement that

the release would not in any way affect the rights of Former Counsel or The Sakla Law Firm to pursue their claim to the remainder of the funds held in the Court's registry. Relator raised these and other objections with counsel for Former Counsel, and requested a simpler release, by email that same day.

On January 5, 2017, Former Counsel again proposed an overly long draft release that contained numerous other provisions unrelated to any dispute between Relator and Former Counsel. A copy of Former Counsel's revised draft is attached hereto as Exhibit C. In particular, Former Counsel's new draft stated that it would not have any effect on Former Counsel's claims to the remaining 38% of the Relator's Share, but contained no such statement regarding Sakla's interest in those funds. *See* Ex. C, ¶ 4. The proposed draft also contained agreements that past contracts, the ongoing validity of which appears to be central to the dispute among Relator's current and Former Counsel, remain in force and effect. *Id.* ¶ 10.

To address these concerns, on January 6, 2017, Relator proposed a redlined version of Former Counsel's January 5 draft suggesting the deletion of many of the extraneous terms. That redline is attached as Exhibit D. On January 9, 2017, Former Counsel responded with their own redline, which struck the key changes Relator had proposed, including the statement that the release would have no effect on the pending attorneys' fee disputes between The Sakla Law Firm and Former Counsel. A copy of that redlined proposal is attached hereto as Exhibit E. Because The Sakla Law Firm will not agree to any joint motion if the mutual release does not contain a statement to that effect, the parties reached an impasse.

On January 10, 2017, Relator indicated that Former Counsel's latest proposal could not be agreed to by Relator. In response, Former Counsel sent yet another redline that made only one change: it deleted even more of the language designed to make clear that the release would

4

have no impact on the pending attorneys' fee dispute. A copy of that redline is attached hereto as Exhibit F. Because of the impasse, and because negotiations have taken a step backward, Relator seeks judicial intervention.

**2.      Relator Wants Only To Be Rid of This Dispute**

Relator is willing to agree to release Former Counsel of any claim he has against them in this or any other matter. Indeed, Relator sought to settle his dispute with Former Counsel precisely so that he would never again need to be involved in litigation with them. Relator simply wants his interest in this litigation to be over. But that is not enough for Former Counsel. Instead, Former Counsel seek to use Relator as leverage in their dispute with Sakla.

That overreaching approach is consistent with Former Counsel's negotiation tactics in this dispute. In June, Former Counsel claimed that they reached a simple settlement with Relator, but when asked to reduce that agreement to writing, they transformed an agreement with three simple parts into a 50-plus page settlement agreement. *See* ECF No. 574 (Relator's opposition to Former Counsel's motion to enforce settlement). Indeed, Relator was advised by his representative in that dispute that he should not involve himself in any way in the dispute between his current and Former Counsel.[1] This pattern of behavior has been consistent during the *eight years* since Relator fired Former Counsel: More than a year and a half after they were terminated (and refused to return unless Dr. LaCorte's chosen attorney, Sakla, was terminated), Former Counsel went so far as to email an attorney for the United States, who was integrally involved in the underlying litigation, to encourage "some personal jeopardy for lacorte" in order to force him to settle then-pending disputes. *See* Email from J. Marc Vezina to Sanjay Bhambhani (Aug. 7, 2009) (possibly sent to Bhambhani's personal e-mail account), attached

---

[1] Relator's attorney, John Litchfield, provided a letter to Relator with that advice. Relator is willing to provide that letter to the Court upon request, should the Court wish to see it.

hereto as Exhibit G.  All of these tactics by Former Counsel have been designed to gain improper negotiating leverage over their former client and Sakla.

Enough is enough.  Former Counsel should not continue to be rewarded for their tactics.  There is absolutely no dispute by *any of the parties* that Relator is entitled to the funds in question, and therefore no reason to keep such funds in the Court's registry any longer.  *See*, *e.g.*, ECF No. 604 at 1-2 (discussing various representations by Former Counsel that Relator is entitled to at least 60% of the funds in the Court's Registry); *see also* Answer and Defenses of Vezina & Gattuso, LLC and Boone & Stone to the Complaint in Intervention Filed by Sherif K. Sakla and the Sakla Law Firm, APLC ¶ 4 ("Denied that there is a dispute among [Former Counsel] and Dr. LaCorte concerning the contingent attorney's fee to be paid from the Court's registry in this matter.  Dr. LaCorte and [Former Counsel] have resolved any issues as to the amount of the contingent attorney's fee by agreeing that the amount of such contingent attorney's fee is 38% of the principal and accrued interest of the funds on deposit in the Court's registry.") (ECF No. 638).

The only reason the funds were retained many months ago was because of the representation of Former Counsel's attorney that the Eastern District of Louisiana would take jurisdiction over the dispute.  That did not happen.  And as the Court recognized at that time, the effort to hold Dr. LaCorte's share was a "ruse," to hold Dr. LaCorte's share "hostage."  *See* May Tr. of Status and Scheduling Conference and Mot. Hr'g at 22:16, 19, ECF No. 553 (May 17, 2016).  The funds should no longer be hostage to Former Counsel's gamesmanship.

Relator respectfully requests that the 62% (plus interest thereon) of the Relator's Share that Former Counsel agreed to release be distributed to him based on this motion, which Sakla concurs with.

Relator has filed all required forms with the Court's accounting office to receive the released funds. A Proposed Order is filed herewith.

## CONCLUSION

For the foregoing reasons, Relator asks that the Court order that 62% of the funds presently held in the Court's registry, plus interest, be released to him.

January 10, 2017

By:

/s/ Silvija A. Strikis
Silvija A. Strikis (*pro hac vice*)
Thomas B. Bennett (*pro hac vice*)
KELLOGG, HUBER, HANSEN,
    TODD, EVANS & FIGEL, P.L.L.C.
1615 M St., NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
sstrikis@khhte.com
tbennett@khhte.com

William F. York, BBO # 537260
John G. Hofmann, BBO # 653989
Gilman, McLaughlin & Hanrahan LLP
101 Merrimac Street, P.O. Box 9601
Boston, MA 02114-9601
(617) 227-9999
wyork@gilmac.com
jhofmann@gilmac.com

*Attorneys for Relator William St. John LaCorte*

**CERTIFICATE PURSUANT TO LOCAL RULE 7.1**

I hereby certify that counsel for Dr. LaCorte conferred in good faith with counsel for Vezina & Gattuso, LLC and Boone & Stone on December 15, 2016, January 4, 2017, January 5, 2017, January 6, 2017, January 9, 2017, and January 10, 2017, in an attempt to resolve or narrow the issues disputed.

/s/ Silvija A. Strikis

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon Christopher O'Hara by electronic mail on January 10, 2017.

/s/ Silvija A. Strikis
Silvija A. Strikis (*pro hac vice*)
KELLOGG, HUBER, HANSEN, TODD
EVANS, & FIGEL, P.L.L.C.
1615 M Street NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
sstrikis@khhte.com

*Attorney for Relator William St. John LaCorte*