# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| *ex rel.* WILLIAM LaCORTE | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 06-cv-11724-DPW |
| v. | ) | |
| | ) | |
| WYETH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## THE SAKLA PARTIES' OPPOSITION TO DISCHARGED COUNSEL'S MOTION TO STRIKE EXPERT WITNESS TESTIMONY

Sherif K. Sakla, M.D., J.D., and the Sakla Law Firm, APLC (the "Sakla Parties"), through undersigned counsel, respectfully submit this opposition to the Motion to Strike Sakla Parties' Expert Witness Testimony (the "Motion") and supporting memorandum (the "Memorandum") filed by Vezina & Gattuso, LLC, and Boone & Stone ("Discharged Counsel"). Doc. Nos. 695, 696.

Notwithstanding this Court's repeated statements that "this case has to be tried as a *quantum meruit* case," in which "the people who were involved [will] explain what it is that they did to contribute to the resolution of the case that justifies a particular fee," *See* Doc. No. 679 at 3, 10, Discharged Counsel continue to improperly rely on a 2004 contract (the "June 2004 CFA") to argue that they are each entitled to a full one-third of the total attorney's fee regardless of the value of their services to Dr. LaCorte. Specifically, Discharged Counsel cite the termination provisions of the June 2004 CFA to argue that they are each entitled to one-third of the fee, despite having been discharged more than eight years before any recovery by Dr. LaCorte, because they were

discharged without cause. *See* Doc. No. 685-1 at 22 (Discharged Counsel's Proposed Findings of Fact, ¶ 53); *id.* at 64 (Discharged Counsel's Proposed Conclusions of Law, ¶ 34).[1]

Even worse, Discharged Counsel now take the position that the Sakla Parties are not even allowed to contest the enforceability of these contractual provisions at trial. Accordingly, Discharged Counsel now broadly seek to exclude expert testimony offered by the Sakla Parties that they find objectionable.[2] However, the present Motion contains little more than a rehash of Discharged Counsel's earlier, rejected efforts to exclude expert testimony from this case. *See* Doc. No. 631 at 5–9 (Report on Choice of Law and Expert Issues). Because Discharged Counsel cannot

---

[1] Discharged Counsel rely on a provision in the June 2004 CFA stating: "If, prior to Recovery on the Claims, (1) Client discharges Trial Lawyers for any reason except Trial Lawyers' misconduct or neglect in investigating and prosecuting the Claims, . . . Client shall nevertheless remain obligated to Trial Lawyers for the full Attorney's Fee provided herein as damages." Doc. No. 655-2 at 3. Unfortunately for Discharged Counsel, however, any such claim for "damages" against the "Client"—*i.e.*, Dr. LaCorte—that might have existed was clearly and expressly released pursuant to the Release Agreement that they signed on January 26, 2017. *See* Doc. No. 646 at 3 ("V&G and B&S releases and forever discharges Dr. LaCorte from all liability or responsibility for all claims, demands, suits, causes of action, rights of action, actions at law or in equity, administrative, or arbitration proceedings, any other proceedings of any kind whatsoever, for damages or any other remedy either V&G or B&S does or may have arising under any statute, regulation, case law, common law rule, or other theory against Dr. LaCorte from any acts, omissions, representations, transactions, occurrences, or facts that have occurred up until and including the Effective Date of this Release . . . .").

[2] Among other things, the expert testimony offered by the Sakla Parties explains that (1) a contractual provision purporting to restrict a client's absolute right to discharge his lawyer or to guarantee an irrevocable fee to the lawyer regardless of work performed would be void as against public policy and unenforceable; and (2) notwithstanding any provision to the contrary in an attorney–client contract, the fee owed to a discharged contingency-fee lawyer must be determined on a *quantum meruit* basis according to the value of the lawyer's work on behalf of the client. *See* Doc. No. 685-7 at 6–15 (Affidavit of Basile Uddo); Doc. No. 685-6 at 5–7 (Affidavit of Douglas Chandler); *see also Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 116 (La. 1978); *City of Alexandria v. Brown*, 740 F.3d 339, 351 (5th Cir. 2014); *Brown v. Seimers*, 726 So. 2d 1018, 1022–23 (La. App. 5th Cir. 1999); *AFLAC, Inc. v. Williams*, 444 S.E.2d 314, 316 (Ga. 1994); *Kirschner & Venker, P.C. v. Taylor & Martino, P.C.*, 627 S.E.2d 112, 113 (Ga. App. 2006); *Eichholz Law Firm, P.C. v. Tate Law Group, LLC*, 714 S.E.2d 413, 417 (Ga. App. 2011). The expert testimony also explains that Discharged Counsel could not rely on the "discharge without cause" provisions of the June 2004 CFA in any event because they were discharged **with** cause. *See* Doc. No. 685-7 at 10–11, 14.

show that any of the expert testimony offered by the Sakla Parties is inadmissible, their Motion should be denied.

## I.     Discharged Counsel's arguments based on "standing" and "inappropriateness" provide no grounds to exclude the Sakla Parties' expert testimony.

Discharged Counsel seek to strike certain expert testimony offered by the Sakla Parties that "criticize[s] the enforceability of the terms within the June 2004 CFA." Memorandum at 5. Discharged Counsel contend that such testimony is "inadmissible" because "[t]he Sakla Parties lack standing to challenge the terms of the [June 2004 CFA]" and because "it is ethically inappropriate for them to attempt to do so." Motion at 2.

Discharged Counsel's argument conspicuously lacks any citation to the Federal Rules of Evidence, and understandably so—the arguments they raise have nothing to do with admissibility of evidence. Discharged Counsel merely cite the three elements of Article III standing from *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), with no explanation as to how Article III standing relates to admissibility of evidence at trial. *See* Memorandum at 3. Additionally, although Discharged Counsel cite a string of judicial opinions discussing enforceability of contracts that arguably raise ethical concerns, they cite no authority whatsoever suggesting that a party could be barred from introducing evidence on the ground that it would be "inappropriate" to challenge provisions in a contract.[3] *See id.* at 3–5.

---

[3] Because the case law cited by Discharged Counsel relates to the ultimate merits of their contractual fee claim rather than admissibility of evidence, the Sakla Parties will not discuss it further in this opposition to Discharged Counsel's Motion to Strike. Suffice it to say that none of the authorities cited by Discharged Counsel is relevant in this case because there was never any agreement between the Sakla Parties and Discharged Counsel to divide the *Wyeth* fee equally, and certainly no understanding that the fee division would be unaffected even if one or more of the law firms were to be discharged years before any recovery.

In any event, Discharged Counsel's suggestion that the Sakla Parties lack "standing" to dispute their reliance on contractual terms that would purportedly grant them equal shares of the *Wyeth* attorney's fee, notwithstanding their discharge more than eight years before any recovery was obtained, is plainly incorrect. Because any money awarded to Discharged Counsel is money that is ***not*** awarded to the Sakla Parties, the Sakla Parties would certainly suffer an "injury in fact" that is "concrete and particularized" if Discharged Counsel were to successfully invoke contractual provisions to obtain an award that far exceeds their proper *quantum meruit* share. *See Lujan*, 504 U.S. at 560. Moreover, such injury would of course be caused by Discharged Counsel's reliance on the contractual terms, and redressable by a ruling that such contractual terms are unenforceable. *See id.* at 560–61. Thus, even assuming for the sake of argument that Article III standing could impose limitations on the arguments and evidence that a party is allowed to introduce at trial, it would not prevent the Sakla Parties from challenging the contractual provisions that Discharged Counsel seek to rely on.

II.     **The Sakla Parties' expert testimony concerns matters on which expert evidence is traditionally offered, and on which Discharged Counsel have themselves introduced expert testimony.**

Discharged Counsel contend that much of the testimony contained in the affidavits of Basile Uddo and Douglas Chandler, as well as portions the deposition of Dane Ciolino, "contain[ ] inadmissible opinions on Georgia and Louisiana law." Memorandum at 6, 11. However, Discharged Counsel's minimal argument on this point—which includes no specific discussion of any of the allegedly improper expert testimony, and which consists almost entirely of an unacknowledged block-quote from the First Circuit's opinion in *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99–100 (1st Cir. 1997), that itself was copied verbatim from an earlier filing, *see* Doc. No. 631 at 6–8—simply does not persuade. Contrary to Discharged Counsel's argument, the expert testimony offered by the Sakla Parties concerns matters on which expert testimony is often offered

and accepted, such as the reasonableness of attorney's fees, the standard of care for lawyers, and whether cause exists for discharge. *See, e.g.*, *In Matter of Liljeberg Enters., Inc.*, No. 94-cv-3804, 1996 WL 169128, at *4 (E.D. La. Apr. 9, 1996) ("Louisiana law specifically allows a court to use expert testimony as an aid in formulating the reasonableness of an attorney fee.") (quotation omitted).

Indeed, Discharged Counsel have submitted their own expert testimony discussing the law on many of the same issues for which they seek to exclude the Sakla Parties' expert testimony, such as the standards for dividing attorney's fees; the effect and enforceability of contractual provisions; and the effect of a "joint venture" on fee division. *See* Doc. No. 686-12 at 8 (Affidavit of Michael Sullivan, ¶ 20) ("Under Georgia law, in the absence of a written or oral agreement as to division of the fee, it is presumed the fee will be divided equally among the firms in the 'team.'"); *see also id.* (¶ 24) ("That June 24, 2004 CFA irrevocably assigns all of the contingent fees from all of these five cases jointly to V&G, B&S, and The Sakla Law Firm, APLC."); *id.* (¶ 25) ("This 'teaming' arrangement under the June 24, 2004 CFA in this case involves all the elements of a joint venture under Georgia law."); *id.* at 9 (¶ 26) ("No standard of ethics and professionalism, and no other legal principle, make such arrangements unenforceable under Georgia law."). Neither of their purported experts have ever been qualified as an expert in the field of legal ethics, and their opinions are, for various reasons, contrary to law and generally incorrect.[4] It would be fundamentally inequitable to allow Discharged Counsel to introduce their own

---

[4] Notably, Discharged Counsel have declined to submit any testimony from Dane Ciolino, their only retained expert witness who actually has been qualified as an expert on legal ethics. In fact, as explained in their Motion, Discharged Counsel are seeking to *exclude* testimony from Mr. Ciolino's deposition.

erroneous expert testimony while denying the Sakla Parties the opportunity to effectively contest it.

Moreover, under the procedures set forth in this Court's "Order Regulating Non-Jury Civil Trial" (the "Trial Order"), the broad exclusion of testimony sought by Discharged Counsel is premature and inappropriate. *See* Doc. No. 682. The Trial Order contemplates that if opposing counsel's objections to direct testimony are sustained by the Court, "the proponent of the evidence may call the witness to the stand to attempt to cure or avoid grounds of objection and elicit evidence to replace that stricken on objection." *Id.* at 4 (¶ III.2.b). Assuming for the sake of argument that any testimony by the Sakla Parties' experts were to constitute impermissible opinions on pure matters of law, the correct remedy would be for Discharged Counsel to object at trial and allow the expert an opportunity to restate his opinion in a permissible way—not to preemptively exclude large portions of the testimony.

The fact that the affidavits offered by the Sakla Parties include statements of law to guide and support the ultimate expert opinions is neither surprising nor problematic. *See, e.g.*, *Institutional Labor Advisors, LLC v. Allied Res., Inc.*, No. 12-cv-44, 2014 WL 4211196, at *17 (W.D. Ky. Aug. 25, 2014) ("[W]hen expert testimony does not address a pure issue of controlling law, but rather explains a legal principle relevant to the case, the testimony should be allowed as assistant, rather than supplanting, the jury's judgment."). Because Discharged Counsel have provided no legitimate grounds for the broad exclusion of evidence they seek, their Motion should be denied.

### III. Discharged Counsel cannot show that the testimony of either Mr. Uddo or Mr. Chandler contains "unreliable factual determinations."

Discharged Counsel challenge the affidavit testimony of Mr. Uddo in which he opines that Dr. LaCorte's termination of Discharged Counsel was for cause, arguing that such testimony is

inadmissible because it "contain[s] factual determinations and lack[s] credibility." Memorandum at 9. First, it is incoherent for Discharged Counsel to object to Mr. Uddo's opinion on discharge for cause as "inadmissible" while offering testimony from their own expert opining that they were **not** discharged for cause. *See* Doc. No. 686-12 at 13–14 (Affidavit of Michael Sullivan, ¶ 43) ("There is more than substantial evidence proving that V&G and B&S were not discharged for cause under any definition of neglect of Dr. LaCorte's Wyeth case, or other misconduct concerning their representation of him."). Second, that Mr. Uddo offers opinions relating to factual issues is not a reason for exclusion—rather, that is precisely the proper use of expert testimony. *See* FED. R. EVID. 702 ("A witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trial of fact to understand the evidence or to determine a fact in issue.").

Discharged Counsel suggest that Mr. Uddo lacks "credibility" because he has stated his opinion concerning discharge for cause despite "admit[ting] that the court is the decision marker [sic] surrounding the nature of V&G and B&S's discharge." Memorandum at 9. There is, however, no contradiction here. Although the Court will certainly be the ultimate fact-finder in the upcoming bench trial, this does not mean that expert witnesses are prohibited from offering opinions that bear on factual determinations. Once again, as Discharged Counsel note in their own Memorandum, "assist[ing] the trier of fact with understanding the evidence or determining a fact at issue in the case" is exactly what expert witnesses *should* be doing. *Id.*

Discharged Counsel likewise suggest that Douglas Chandler lacks credibility because he opined that "the Discharged Lawyers do not have any claim for a contingency fee against LaCorte or their former co-counsel, Sakla," despite also stating that "the Discharged Lawyers may . . . be entitled to receive the *quantum meruit* value of their provable, reasonable, and necessary services

to, or on behalf of, LaCorte on the Wyeth Claims prior to the[ir] respective termination dates." *See* Memorandum at 9–10 and Doc. No. 685-6 at 6–7 (¶¶ 12–13) (Affidavit of Douglas Chandler). But there is no contradiction in suggesting that Discharged Counsel may be entitled to a *quantum meruit* fee but not a contingency fee—indeed, that has been the Sakla Parties' consistent position throughout this fee dispute.

## CONCLUSION

Because Discharged Counsel cannot show that any of the expert testimony offered by the Sakla Parties is inadmissible, their Motion to Strike Sakla Parties' Expert Witness Testimony should be denied.

Respectfully submitted,

/s/ Richard C. Stanley
Richard C. Stanley (*pro hac vice*)
William M. Ross (*pro hac vice*)
STANLEY, REUTER, ROSS,
    THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, LA 70112
(504) 523-1580 telephone
(504) 524-0069 facsimile

Isaac H. Ryan (*pro hac vice*)
DEUTSCH KERRIGAN, LLP
755 Magazine Street
New Orleans, LA 70130
(504) 581-5141 telephone
(504) 566-1201 facsimile

Lisa G. Arrowood (BBO # 022330)
ARROWOOD LLP
10 Post Office Square, 7th Floor South
Boston, MA 02109
(617) 849-6200 telephone
(617) 849-6201 facsimile

*Attorneys for Sherif K. Sakla, M.D., J.D., and
the Sakla Law Firm, APLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 10, 2018.

/s/ Richard C. Stanley